**In the Matter of the Discipline of Lawrence R. BIHLMEYER, as an Attorney at Law.**

**No. 18400.**

Supreme Court of South Dakota.

Argued Feb. 14, 1994.

Decided April 20, 1994.

R. James Zieser, Tyndall, for complainant Disciplinary Bd.

Allen G. Nelson of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for respondent Bihlmeyer.

AMUNDSON, Justice.

This is a disciplinary proceeding against Respondent Lawrence R. Bihlmeyer (Bihlmeyer), a member of the State Bar of South Dakota. The Disciplinary Board of the State Bar (Board) and a referee have recommended public censure.

## FACTS

In 1972, Bihlmeyer completed his legal education and was admitted to practice law in the State of South Dakota. He started practicing as a Deputy State's Attorney in Pennington County and as a Deputy City Attorney in Rapid City, South Dakota. Approximately three years later, he began practicing law as a sole practitioner in Rapid City, concentrating in worker's compensation, bankruptcy, and domestic relations with some minor involvement in personal injury and criminal work. Bihlmeyer has and does advertise in the yellow pages, holding himself out to be knowledgeable in the area of worker's compensation.

Sally Ann Powell (Powell) of Box Elder, South Dakota, employed Bihlmeyer to handle her husband's probate and her worker's compensation claim for benefits from the death of her husband in Iowa. Bihlmeyer had Powell sign three separate employment agreements. All of these agreements established a contingent fee to be paid Bihlmeyer in the event of recovery.

In May of 1989, Bihlmeyer and Powell appeared before the Industrial Commissioner of Iowa seeking payment of the worker's compensation benefits. They were requesting a full or partial payment in lieu of monthly payments for the rest of Powell's life. The Commissioner rejected both the total and partial payment plans but allowed Powell to receive approximately $12,000.00 in a retroactive payment. Bihlmeyer received 25% of this payment pursuant to the retainer agreement with Powell. Bihlmeyer and Powell later agreed that the fee percentage for future recovery would be reduced from 25% to 20%.

Next, Bihlmeyer, with the consent of Powell, mailed another application to the Commissioner for a partial lump-sum payment. This application claimed Powell needed to buy a house, pay medical expenses, and obtain a vehicle. The application requested approximately $61,000.00 in partial lump-sum payment and also $1,237.80 a month for the next eight years as full payment for worker's compensation. Under this proposal, Powell would receive $31,000.00 and Bihlmeyer would be paid approximately $30,000.00 for his attorney fees. It was represented that this would be the total fee charged. The Commissioner approved this proposal and fee as required by Iowa law.

Bihlmeyer received a $59,000.00 check representing the partial lump-sum payment from the Iowa Industrial Commissioner. Powell had received a $2,000.00 advanced payment. At his office, Bihlmeyer presented a $19,000.00 check to Powell for her share of the payment with no explanation as to how it was calculated. Upon receiving her check, Powell inquired about the difference in this payment and the amount she was to receive under the second proposal presented to the Iowa Commissioner. After letting Bihlmeyer know of her displeasure with the proposed division, Bihlmeyer asked her how much she thought she deserved. Bihlmeyer then agreed to pay her an additional $5,000.00. Powell, although upset, accepted and cashed the check for $24,000.00. Powell had always understood that she should receive approximately $31,000.00 for a house, medical expenses and vehicle as proposed.

Bihlmeyer later represented that he calculated his fee based on the contingent fee agreement rather than the settlement proposal prepared and submitted on behalf of his client to the Iowa Industrial Commissioner. In calculating his 20% fee on the future installment benefits, Bihlmeyer failed to reduce these payments to present value.

Powell, feeling she had not received a proper division of the partial lump-sum payment, filed a complaint with the State Bar Disciplinary Board. After this filing, Bihlmeyer offered to pay for an attorney chosen by Powell to represent her and advise her in settlement of this fee dispute. Powell retained Richard L. Bode (Bode) and an agreement was made with Bihlmeyer to pay Powell the remainder of the $31,000.00 which was due her. Bihlmeyer paid the additional $5,000.00 plus interest prior to the hearings held in this matter.

The Disciplinary Board found that Bihlmeyer had violated Rules of Professional

Conduct 1.4 [1], 1.5(a), and 1.5(c) [2] requiring that the attorney communicate with his client to the extent reasonably necessary to permit the client to make informed decisions, that attorney fees shall be reasonable and that contingent fee agreements set forth the method used for computation. The Board also found that Bihlmeyer's conduct was dishonest and prejudicial to the administration of justice in violation of Rules 8.4(c) and 8.4(d) [3] because he paid himself a fee that was more beneficial to himself than his client under circumstances which prejudiced the client. The Board recommended public censure.

This matter was then referred for a hearing by a referee. The referee found that Bihlmeyer had made a misrepresentation to the Iowa Industrial Commissioner about attorney fees and distribution of payment. The referee found "[u]nder Rules of Professional Conduct, Rule 1.5 entitled Fees, (a) a lawyer's fees should be reasonable. The [referee] finds that Mr. Bihlmeyer attempted to apply 20% of attorney's fees based on future payments without being reduced to present value. This would violate the spirit of Rule 1.5." The referee also found a failure to comply with Rule of Professional Conduct 3.3, Candor Towards the Tribunal. The referee recommended public censure.

## ANALYSIS

■ This court need not defer to a recommended discipline of the Board or referee, because the ultimate decision for discipline of members of the State Bar rests with this court. *Matter of Discipline of Stanton,* 446 N.W.2d 33 (S.D.1989).

■ Bihlmeyer personally appeared before this court, admitted misrepresenting the fee agreement to the Iowa Industrial Commission, admitted charging a fee in excess of that approved by that Commission, and acknowledged that he was negligent in not having reduced the recovery to present value when calculating his fee. He apologized for the embarrassment he has caused the profession and candidly admitted that public censure would be an appropriate discipline. Therefore, Bihlmeyer having admitted to violating the Code of Professional Conduct, this court need only determine the appropriate discipline to be imposed.

In arriving at its recommendation, the Board considered eleven complaints previously filed against Bihlmeyer since 1981, some of which were dismissed and others resulting in an admonishment or caution from the Board. "The prior record of an attorney may be considered in determining the appropriate discipline." *In re Goodrich,* 88 S.D. 146, 216 N.W.2d 557, 559 (1974) (citing *Simmons v. State Bar of California,* 2 Cal.3d 719, 87 Cal.Rptr. 368, 470 P.2d 352 (1970)).

Bihlmeyer admitted his conduct constitutes a violation of South Dakota Rule of Professional Conduct 3.3, Candor Towards the Tribunal. Rule 3.3 states: "(a) lawyer shall not knowingly: (1) make a false statement of

---

1. Rule 1.4 Communication
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

2. Rule 1.5 Fees
   (a) A lawyer's fee shall be reasonable....
   (c) A fee may be contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

3. Rules of Professional Conduct Rule 8.4(c) and (d) provide:
   It is professional misconduct for a lawyer to:
   ....
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice[.]

material fact or law to a tribunal; ... (b) the duties stated in paragraph (a) continue to the conclusion of [a] proceeding."

This rule was violated when Bihlmeyer attempted to collect a 20% fee through his retainer agreement with Powell which exceeded the fee presented in the proposal to the Iowa Industrial Commissioner. Under Iowa law "all fees ... for legal ... services rendered ... are subject to the approval of the Industrial Commissioner." Iowa Code Ann., § 86.39 (West 1993). By presenting the settlement proposal to the Iowa Industrial Commission, Bihlmeyer committed himself to only those fees approved by the Commission. His attempt to charge a retainer of $10,000.00 over and above the approved fee agreement is clearly a violation of Rule 3.3.

This court has previously imposed public censure for misrepresentations to the court. *Matter of Discipline of Schmidt,* 491 N.W.2d 754 (S.D.1992); *Matter of Discipline of Rensch,* 333 N.W.2d 713 (S.D.1983).

> We cannot overemphasize the importance of attorneys in this state being absolutely fair with the court. Every court ... has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it. Therefore, candor and fairness should characterize the conduct of an attorney at the beginning, during, and *at the close of litigation.*

*Schmidt,* 491 N.W.2d at 755 (citing H. Drinker, Legal Ethics 74 (1953)) (emphasis supplied).

Rule 1.4 requires an attorney to explain matters, including the division of settlement proceeds, to the client so that the client is able to make an informed decision regarding the representation. Since candor and fairness are required for representations to a tribunal, it only seems logical that such candor and fairness should be extended to the client, especially when you are dividing up the client's money. Such open and fair disclosure can only ensure the maintenance of an appropriate lawyer/client relationship. Since Bihlmeyer did not provide Powell with a breakdown of the method employed by him in assessing his fee, it is obvious why his attorney/client relationship with Powell deteriorated to the point where the complaint was filed.

Powell was not able to make an informed decision because she was not provided with a written statement explaining the outcome of this matter. "Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter ... showing the remittance to the client and the method of its determination." Rule 1.5(c).

Bihlmeyer's admitted conduct constitutes a violation of Rules of Professional Conduct, 1.4 Communication, 1.5 Fees, 3.3 Candor Toward the Tribunal, and 8.4 Misconduct. This attempted overcharge certainly is not an example of professionalism and was prejudicial to the administration of justice. Rules 8.4(c) and (d).

■ In determining an appropriate discipline, this court reviews the totality of the attorney/client relationship to determine if any mitigating factors warrant consideration. *Matter of Walker,* 254 N.W.2d 452 (S.D. 1977). The referee for this case found, "[t]o Mr. Bihlmeyer's credit, he has made every effort to rectify the mistakes that he made and has fully compensated Ms. Powell." Although this does not absolve Bihlmeyer from discipline, it certainly constitutes conduct on his part to correct his error.

This court concludes that the appropriate discipline in this case is public censure with the condition that Bihlmeyer maintain and provide Board with proof of legal malpractice insurance or other appropriate security to protect his clients. *See Matter of Discipline of Martin,* 506 N.W.2d 101, 106 (S.D.1993); SDCL 16–19–35(4). Further, judgment is rendered against Bihlmeyer for all necessary costs which are taxable by the clerk as set forth in SDCL 16–19–70.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I vote for a public censure in this ethics case, I cannot join it wholeheartedly

because of its erosion of precedent. In *Matter of Discipline of Schmidt*, 491 N.W.2d 754, 756 (S.D.1992), we expressed:

Private reprimands are not ordinarily subject to public disclosure but under the circumstances of this case, namely that there was a prior formal proceeding, including oral argument before the Supreme Court, the subject of the private reprimand was a formal record of this Court. Thus, we hold that it is appropriate to disclose it in this, a separate disciplinary proceeding.

Here, the majority writer reaches back to "11 complaints previously filed against Bihlmeyer since 1981, *some of which were dismissed* and others resulting in an admonishment or caution from the Board." (Emphasis supplied mine.)

In reading the record in this case, the FORMAL ACCUSATION against attorney Bihlmeyer does not refer to said 11 complaints. If these are being used as a basis for discipline in this case, it should be pleaded; also, the FINDINGS AND RECOMMENDATION of the Referee do not allude to any 11 complaints against attorney Bihlmeyer. Furthermore, the FINDINGS OF FACT AND PROPOSED RECOMMENDATIONS of the Disciplinary Board do not refer to said 11 complaints. Like anyone who is charged with wrongdoing before the Bar of Justice, an attorney should only have to answer for those matters he is accused of doing. In my opinion, it is unfair to bring up 11 complaints against attorney Bihlmeyer, obviously some being dismissed and "others resulting an admonishment or caution from the Board." Essentially, it is a deprivation of due process to now accuse someone, after the formal accusation has been made, based upon previous informal proceedings. "Courts uniformly insist that discipline is not a 'criminal' proceeding, to which the stricter requirements of due process apply." Charles W. Wolfram, Modern Legal Ethics § 3.4, at 99 (1986). *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), tends to agree, but holds that due process requires that the respondent receive sufficient notice of the *charges* to be considered upon which the disciplinary agency bottoms its findings. Therein, a charge—not among the charges

that brought attorney Ruffalo to the proceedings—was used to disbar him. In a sense, this case is somewhat comparable. Apparently, the Board utilized information which was not equivalent to the level of "charges" when contemplating the sanction. Surely, dismissed complaints are not the same as "charges" nor are they the same as "discipline." In *Goodrich*, followed by the majority opinion, we had before us a case which permitted consideration of past "discipline." It strikes me that there is surely a legal difference between "discipline" and "complaints;" and to compare "discipline" with "dismissed complaints" is wrong.

This Court has, with few exceptions, long moored its ethics decisions to past reported ethics cases in this state. With the advent of uniform adoption of ethics rules throughout the United States, it becomes more important for South Dakota's legal profession to review ethics treatises in other states or written by the academe. Slowly, but surely, even the midwestern states are being brought in to American Bar Association standards and interpretation of those standards. It is beyond cavil that the Supreme Court of South Dakota has the ultimate decision on disciplining attorneys. SDCL 16–19–21. Within the framework of that statement, the Supreme Court must grow, in its reflections, by a review of present standards which the legal profession has imposed upon the lawyers of this state. Therefore, in the metamorphosis of ethics cases, we must review outside authorities, from time to time, for enlightenment. Modern Legal Ethics § 3.5, at 119, states that the disciplinary agency can consider "other indicators or whether the conduct was isolated or part of a pattern of repeated behavior" in determining sanctions. ABA/BNA, *Lawyers' Manual on Professional Conduct* § 101:3101 (1987) states that "matters not directly connected to the alleged misconduct are relevant in aggravation or mitigation of the sanction to be imposed." However, a listing of six general examples of other indicators did not list "prior complaints." Instanter, to repeat my earlier remarks, neither the Findings and Recommendation of the Referee nor the Findings of Fact and Proposed Recommendation of the Disciplinary Board refer to said eleven com-

plaints. This takes us back to the due process question.

It appears that an attorney cannot be ambushed with new charges after the disciplinary proceeding is underway, per *Ruffalo*, which also calls for a degree of due process disciplinary actions. Legal authorities and the ABA allow for the admission of other indicators, but does not comment on the element of surprise. Hence, notice that the eleven prior complaints will be considered appears to be required under *Ruffalo*. If Bihlmeyer does not have notice that eleven complaints were to be used as indicators for enhancing his sentence, the Board has erred (in my opinion) by using these eleven complaints. Lawyers are always fighting for their clients to get due process. Lawyers owe a duty to give their fellow lawyers due process. Many moons ago, as a cub on this Court, I wrote in *Light v. Elliott*, 295 N.W.2d 724, 727 (S.D.1980) (Henderson, J., dissenting), "Lawyers are people, too."

Admonishments are not a "private *reprimand*" and a "caution" is not a "reprimand." Same are to be considered private sanctions. ABA/BNA, *Lawyers' Manual on Professional Conduct* § 01.813 (1986).

The wording in *Schmidt* was joined by Chief Justice Miller, Justice Wuest, and Justice Amundson. Only Justice Sabers disagreed with the wording "private reprimands are not *ordinarily* subject to public disclosure ..."

If "admonishments" are disclosed, if "private reprimands" are disclosed, their purpose is defeated.

There are few *real* "doctrines" in the law. There are some "rules of law." Stare decisis is not a "rule of law;" it is not a "precedent." It is a doctrine. Within "stare decisis," obviously, there is precedent. It means to *stand by precedent.* We should stand by precedent.

Metamorphosis in South Dakota Ethics. Consider: Code of Professional Responsibility was originally approved by the Supreme Court of South Dakota in 1970; it was amended in 1979, 1984, and 1986. The current code was adopted and reenacted in 1987, effective July 1, 1988. Although it is now known as the South Dakota Rules of Professional Conduct, notice that the subtitle dubs it: "*Model* Rules of Professional Conduct." (Emphasis supplied mine.) Lawyers and the Disciplinary Board must keep abreast of change. I say this in light of statistics which I have garnered on attorney disciplines filed in this state. In the 1950s, this Court had 8 attorney disciplinary actions; in the 1960s, there were 10 of said actions; in the 1970s, there were 17 attorney disciplinary actions; this Court had 54 disciplinary actions in the 1980s; and three years into the 1990s, we have had 35 of said actions. There is an increase of 575% in the 1980s over the 1950s. At the present rate of 35 disciplinary actions for the first three years in the 1990s, a projection for the 1990s (assuming the present rate continues), we would have a 1,300% increase from the 1950s.