2000 SD 100

**In the Matter of the DISCIPLINE OF Charles E. LIGHT, Jr., as an Attorney at Law.**

**No. 21033.**

Supreme Court of South Dakota.

Argued April 26, 2000.

Decided July 26, 2000.

Laurence J. Zastrow, Deputy Board Counsel, Pierre, South Dakota, Attorney for Disciplinary Board of the State Bar.

Charles E. Light, Jr., Yankton, South Dakota, Pro Se Respondent.

KONENKAMP, Justice

[¶ 1.] This is disciplinary proceeding against an attorney who improperly managed a trust account and changed a contingency fee agreement without properly advising his client on the effect of that change. We conclude that a public censure is the appropriate discipline for both violations.

## Background

[¶ 2.] Charles E. Light, Jr., graduated from the University of South Dakota School of Law in 1959. He was admitted to practice law in this state on August 13, 1959. He has also been admitted in Nebraska. After his graduation from law school, he served as a law clerk for Federal District Court Judge G.T. Mickelson. Following this he practiced first as an associate and then as a partner in a Brookings law firm until 1965. Then he was a partner in a Yankton law practice until 1976. Thereafter, he worked as a solo practitioner, hiring various associates in both Yankton and North Sioux City, South Dakota.

### Trust Account

[¶ 3.] Light became a solo practitioner in Yankton in 1976. He had several clients in the North Sioux City area, and in the early 1990s he set up another office there, conducting business at this office one or two

days a week. In January 1995, he hired Elizabeth Row as an associate at the North Sioux City office. Although a secretary was eventually hired for this satellite office, the Yankton office handled the bookkeeping and accounting.

[¶ 4.] The North Sioux City office maintained the deposit books for its accounts. Row was allowed to make deposits into those accounts. The only person authorized to sign on the accounts, however, was Light. In order to facilitate payment of various office expenses and the disbursement of trust account funds, Light regularly pre-signed blank checks and left them at the North Sioux City office.

[¶ 5.] Following a disciplinary action in 1997,[1] client retainers[2] were placed in a "holding account" for the North Sioux City office. After sales tax was subtracted, the amount was divided according to a prearranged percentage between Row and Light. A client's bill would indicate a balance of the unearned portion of a fee, but that money was not in the trust account. Also, in spite of the fact that Light completed and signed annual certificates of compliance as required by SDCL 16–18–20.2, he did not conduct a monthly reconciliation of accounts.

[¶ 6.] The Disciplinary Board concluded that Light violated Rule 1.15 of the Rules of Professional Conduct, as well as SDCL 16–18–20.2. The Board found that Light had attempted to "delegate responsibility for his nondelegable responsibilities for his trust account." The Board recommended that Light be publicly censured for these violations. This Court appointed Circuit Judge Eugene E. Dobberpuhl as Referee

on July 1, 1999. Following a hearing on the matter on January 18, 2000, the Referee agreed with the Board on the violation of Rule 1.15 and SDCL 16–18–20.2. The Referee recommended, however, that Light be given a private reprimand.

### Jungemann Fee Agreement

[¶ 7.] In 1996, as an associate in Light's firm, Row negotiated a retainer agreement with Janice Jungemann, which allowed the firm to represent her in a wrongful death action. The agreement provided for the firm to take 30%, excluding any property settlement costs and expenses, which were to be paid before the 30% was taken. The agreement was in writing, but was never signed by Row or Jungemann. Row worked on the case for approximately a year, and then turned it over to Light. In March 1998, Light sent a letter to Jungemann, stating:

I have reviewed the Contingent Fee Agreement which you apparently received from Ms. Row. The agreement was unsigned, and I wonder whether you ever signed a Contingent Fee Agreement. I could not find one in my file.

In any event, I have enclosed another agreement for your review and signature. You will note that this agreement is for 33 1/3%. This is the basis upon which we take all personal injury cases.

The new agreement given to Jungemann changed the terms of the fee arrangement by increasing the percentage to 33 1/3% and removing the provision stating that property settlement costs and expenses were to be paid before the law firm's percentage was taken out. Light did not

---

1. During the course of a 1997 investigation on a complaint concerning a loan made to Light by a client, the Board became aware that Light had maintained trust accounts in which he kept substantial amounts of his own funds along with those of clients. He had done this as an accommodation for his clients so that they could be paid before settlement checks cleared. Light represented to the Board that steps had been taken to correct handling of the funds, that only client funds remained in trust accounts, and that steps

had been taken to comply with the requirements of Rule 1.5. The Board issued separate private reprimands for the client loan conduct and for the mishandling of accounts.

2. Light asserted that these were "client fees" because he took indigent clients, and by the time the "retainers" were received, sufficient work had been done on behalf of the client to consider them "earned fees."

disclose to Jungemann in writing that the change in the fee agreement was from one based on a percentage of the net recovery to one based on the gross recovery. This change resulted in Light receiving approximately $8,900 more under the 1998 fee agreement than he would have received under the 1996 agreement. The new agreement also provided that Jungemann was responsible for reimbursing the law office for motel and meal costs incurred, an item that had not been included in the earlier agreement.

[¶ 8.] This matter was investigated at the same time as the trust account violation. The Disciplinary Board and the Referee agreed that this change in the fee agreement violated Rules 1.5, 1.7, 1.8, and 1.16 of the Rules of Professional Responsibility, and the Board also concluded that Rule 8.4 was violated. Both the Board and the Referee recommend a public censure for this violation.

### Analysis and Decision

[¶ 9.] This Court gives due consideration to the findings of the Board and Referee, as they have had the advantage of encountering the witnesses firsthand. *Matter of Claggett,* 1996 SD 21, ¶ 9, 544 N.W.2d 878, 880 (citing *In re Discipline of Jeffries,* 500 N.W.2d 220, 225 (S.D.1993)). We do not, however, defer to a sanction recommended by the Referee. *Id.* (citing *In re Discipline of Dana,* 415 N.W.2d 818, 822 (S.D.1987)). We may adopt the Referee's findings without adopting the Referee's recommendation. *Id.* "The ultimate decision for discipline of members of the State Bar rests with this Court." *In re Discipline of Dorothy,* 2000 SD 23, ¶ 16, 605 N.W.2d 493, 497 (quoting *Claggett,* 1996 SD 21, ¶ 9, 544 N.W.2d at 880) (other citations omitted)).

### The Trust Account

[¶ 10.] The Board and the Referee concluded that Light's handling of funds violated Rule 1.15 and SDCL 16–18–20.2. Rule 1.15 governs the safekeeping of client property, while SDCL 16–18–20.2 specifies the minimum accounting records that must be maintained and the procedures that must be followed when handling trust accounts. Additionally, SDCL 16–18–20.2 contains the format to be used when filing the annual certificate of compliance.

[¶ 11.] A review of the record in this case persuades us that the factual findings of the Board and the Referee are not clearly erroneous. Light denies having knowledge of any unearned fees being placed in the "holding account." He attempts to shift the blame for any such deposits and for the way the funds were handled to his bookkeeper and Row. Light was questioned about his practice of leaving blank, pre-signed checks at the North Sioux City office. He answered that he did not believe this was an improper way to run a trust account, but testified that he believed Row had signed his name without authority to do so on many occasions. The accounts were not reconciled to confirm that the checks were used for proper purposes or that the trust account funds were properly credited. Light admits that it was his responsibility to oversee the accounts, yet says he simply trusted that his staff and Row were doing it correctly. Light testified that although he was aware that when he signed the certificates of compliance he was stating that he had reconciled the trust account journal with the bank statement each month, he did not do so. Light defended this failure, arguing that in the "real world" he believed it was commonly not done.

[¶ 12.] Disciplinary proceedings have as their purpose the protection of the public. *Petition of Pier,* 1997 SD 23, ¶ 8, 561 N.W.2d 297, 299 (citations omitted). They are not conducted to punish the lawyer. *Id.* "The practice of law imposes a formidable responsibility upon lawyers to protect their clients' 'property, freedom, and at times their very lives.'" *Id.* (quoting *Petition of Chamley,* 349 N.W.2d 56, 58 (S.D.1984)). The appropriate discipline in a particular case depends on the seri-

ousness of the attorney's misconduct and the likelihood that it or similar misconduct will be repeated. *In re Discipline of Kirby*, 336 N.W.2d 378, 380 (S.D.1983). We take the action necessary to protect the public from future harm at the hands of an attorney whose conduct is under question. *Id.* (citing *In re Discipline of Kintz*, 315 N.W.2d 328, 331 (S.D.1982)).

[¶ 13.] SDCL 16-19-35 provides that misconduct may serve as the grounds for disbarment, suspension, probation, public censure, or private reprimand. Although we have not adopted the ABA Standards for Imposing Lawyer Sanctions, and are not adopting them here, for guidance we do consider the Standards. *See Claggett*, 1996 SD 21, ¶ 16, 544 N.W.2d at 881. Factors to be considered include (1) "the duty violated"; (2) "the lawyer's mental state"; (3) "the actual or potential injury caused by the lawyer's misconduct"; and (4) "the existence of aggravating or mitigating factors." ABA Standards for Imposing Lawyer Sanctions Rule 3.0 (1991).

[¶ 14.] Under the first factor, the duty violated may be one "owed to a client, the public, the legal system, or the profession." ABA Standards Rule 3.0 cmt. Attorneys have a duty to protect their clients' funds; a duty to ensure that the public knows that trust account checks are correctly drawn; a duty to the legal system to preserve the confidence that allows attorneys to have possession of client funds in certain transactions; and a duty to the profession so that the freedom to handle client funds is not hampered by interference with attorney-client confidentiality.

[¶ 15.] Second, "[t]he lawyer's mental state may be one of intent, knowledge, or negligence." *Id.* A reprimand or an admonition is suggested when an attorney is negligent in handling a client's property. ABA Standard Rule 4.13, 4.14. The Disciplinary Board made a specific finding that it found Light's testimony to be "inconsis-

tent and not credible" when he testified that he had total control of the various bank accounts, yet claimed to lack knowledge of how those accounts were being used. While this may not lead to the conclusion that the trust fund violation occurred with his full knowledge, it certainly shows that his actions were negligent. Light testified that he only casually reviewed the bank statements and left the task of overseeing them to his bookkeeper. After being put on alert by the prior disciplinary action against him for a trust account violation, Light represented to the Board that steps had been taken to correct the handling of trust account funds and that procedures had been implemented to comply with Rule 1.15. While he may have corrected the situation present in the earlier disciplinary action, Light did not take steps to ensure that the trust accounts were being used properly by his associates and employees.

[¶ 16.] Regarding actual or potential injury, apparently no clients suffered a loss as a result of the unearned fees and retainers being deposited in the holding account. This lack of actual injury is the result of Attorney Row restoring all of her unearned money, even though she had received only a portion of those fees. There was, however, a very real potential for injury resulting from this improper commingling.

[¶ 17.] Any aggravating or mitigating factors present may be considered when determining the proper sanction to impose. ABA Standards Rule 9.1. As suggested by the guidelines, factors that may justify a more serious discipline include:

(a) prior disciplinary offenses, (b) dishonest or selfish motive, (c) a pattern of misconduct, (d) multiple offenses, (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary

process, (g) refusal to acknowledge wrongful nature of conduct, (h) vulnerability of victim, (i) substantial experience in the practice of law; and (j) indifference to making restitution.

*Claggett*, 1996 SD 21, ¶ 16, 544 N.W.2d at 881 (citing ABA Standards Rule 9.22).

[¶ 18.] Here, there was a prior disciplinary record involving the handling of a trust account. "The prior record of an attorney may be considered in determining the appropriate discipline." *In re Discipline of Bihlmeyer*, 515 N.W.2d 236, 238 (S.D.1994) (quoting *In re Goodrich*, 88 S.D. 146, 216 N.W.2d 557, 559 (1974) (citation omitted)). Light received a private reprimand in 1997 for commingling funds in a trust account. At that time he represented to the Board that he had "taken steps to correct the handling of funds in [the] trust account" and had "instituted procedures to comply with the requirements of Rule 1.15."

[¶ 19.] A pattern of misconduct is suggested by Light's regular failure to keep adequate records and perform a monthly reconciliation of the trust accounts. He filed a Certificate of Compliance as recently as January 14, 1998 falsely certifying that he had complied with the provisions of Rule 1.15 and SDCL 16–18–20.2.

[¶ 20.] Multiple offenses are an aggravating circumstance. Light faces discipline for obtaining a fee arrangement from his client Jungemann with terms more favorable to Light than the original arrangement, and without complying with the provisions of Rule 1.8. Also, the Board asserts that Light submitted false evidence and committed other deceptive practices during this disciplinary process. Light submitted trust records for the North Sioux City accounts that contain numbers representing a balance of "Inflows" and "Outflows" that are inaccurate, journal entries that do not match their corresponding "ledger entries," and did not include entries revealing tax expenditures from the trust account. Light is an experienced practitioner. He has been a

member of the State Bar of South Dakota for forty-one years. Considering this amount of experience, he cannot say he was caught unaware by the fact that certain requirements must be met when handling client funds.

[¶ 21.] Finally, Light showed an indifference to making restitution. Despite knowing that Row deposited unearned fees and client retainers into the holding account, he did not take any steps to see that the portion of those client funds he received were restored to the trust account for the clients. Instead, he demanded further proof and chose to resolve the matter as part of a lawsuit with Row.

[¶ 22.] We also consider factors that may justify a reduction in the discipline imposed:

(a) absence of a prior disciplinary record, (b) absence of a dishonest or selfish motive, (c) personal or emotional problems, (d) timely good faith effort to make restitution or to rectify consequences of misconduct, (e) full and free disclosure to Disciplinary Board or cooperative attitude toward proceedings, (f) inexperience in the practice of law, (g) character or reputation, (h) physical or mental disability or impairment, (i) delay in disciplinary proceedings, (j) interim rehabilitation, (k) imposition of other penalties or sanctions, (*l*) remorse, and (m) remoteness of prior offenses.

*Claggett*, 1996 SD 21, ¶ 16, 544 N.W.2d at 881 (citing ABA Standards Rule 9.32). While Light may not have had dishonest or selfish motives, the other factors are not applicable to his situation.

[¶ 23.] The ABA Standards set out guidelines for appropriate discipline when an attorney fails to preserve a client's property, and are applicable to this action relating to trust accounts. ABA Standards Rule 4.1. According to the guidelines, "[r]eprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." ABA Stan-

dards Rule 4.13. "Reprimand should be reserved for lawyers who are merely negligent in dealing with client property, and who cause injury or potential injury to a client." ABA Standards Rule 4.13 cmt. "Reprimand is also appropriate when a lawyer is negligent in training or supervising his or her office staff concerning proper procedures in handling client funds." *Id.* We conclude, therefore, in view of the misconduct and the applicable factors that a public censure is the appropriate discipline to be imposed for the trust account violation.

### *Jungemann Fee Agreement*

[¶ 24.] The Board and the Referee concluded that by obtaining a new fee agreement, Light violated the Rules of Professional Responsibility, specifically the following:

1.5 subsection (b), requiring the basis of the fee to be in writing when the client is not one regularly represented, and subsection (c), requiring contingency fees to be in writing, stating the percentage to go to the lawyer, and whether expenses are deducted before or after the contingency fee is calculated;

1.7(b) prohibiting representation of a client when there is a conflict of interest;

1.8(a) prohibiting business transactions with a client without full disclosure in writing to the client that may be reasonably understood by the client, and the client has a reasonable opportunity to seek independent counsels;

1.16(b) stating the situations upon which "a lawyer may withdraw from representing a client."

**3.** Light stated during the January 18, 2000 hearing before the Referee:

You're taking [the question of whether the difference in the percentage of the contingency amounts could be translated into a dollar amount increase for the law firm] out of context because you're presuming that I changed the terms of some agreement.

The Board also concluded Rule 8.4 (enumerating conduct by an attorney that amounts to professional misconduct) was violated.

[¶ 25.] Light testified he believed that since the fee agreement Row had presented to Jungemann had not been signed, there was no contract for legal services that could have been enforced by either the firm or Jungemann before the one he entered into with her based on 33 1/3% of the gross settlement.[3] Light acknowledged, however, that Jungemann was a client of the law office from the time Row first met with her and agreed to take the case. Light admitted that he did not advise Jungemann of the differences in the documents, stating that Jungemann was aware of the difference between 30% and 33 1/3%, and that the other differences "were obvious."

[¶ 26.] We agree that Light violated Rule 1.5(b) and (c). Jungemann was not a client who had been regularly represented by the Light Law Firm. Row had provided Jungemann with a contingency fee agreement at the beginning of the representation. Light later took over the matter, and approximately three months before settling the case presented Jungemann with the new contingency fee arrangement with new terms. *See* Rule 1.5(c).

[¶ 27.] "Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client." ABA Standards Rule 4.63. Aggravating factors relevant here are Light's refusal to acknowledge the wrongful nature of the conduct and his substantial experience in the practice of law.[4] The absence of prior disciplinary

And what I've told you repeatedly is I didn't feel that there was, in fact, an agreement that could be enforced until Mrs. Jungemann signed Exhibit 3. That's the way I felt about it.

**4.** An indifference to making restitution may also be considered an aggravating factor, although the record indicates that Light simply

action for this type of act is a possible mitigating factor.

[¶ 28.] The record supports the findings by the Board and the Referee that Light failed to advise Jungemann that he could not withdraw from representing her if she refused to sign the fee arrangement with terms less favorable to her. The finding that Light did not advise Jungemann that she could have an independent attorney explain the effect the changes in the fee agreement would have on her and advise her in the matter is substantiated by the record as well. Light admits to both. These findings in turn support the conclusion that Rules 1.7(b), 1.8(a), and 1.16(b) were violated. Light's interests in the new fee arrangement were contrary to those of his client. When the violation involves a conflict of interest that results because of the attorney's negligence in determining, or failing to determine, that the client's interests may be materially affected by the lawyer's own interests, and there is actual or potential injury to that client, a reprimand is generally the appropriate sanction. ABA Standards Rule 4.33 and cmt.

[¶ 29.] Finally, a breach of Rule 8.4 stems from the breach of the earlier stated Rules of Professional Conduct. Light's failure to inform his client of the effect the fee agreement would have on her potential interest in the case, as well as his failure to tell her that she could seek independent counsel or refuse the arrangement, violated these rules. This behavior amounted to a misrepresentation, and was conduct damaging to the attorney-client relationship. Light's actions also reflect poorly on the legal profession and were prejudicial to the administration of justice. *See Bihlmeyer,* 515 N.W.2d at 239. As stated in the Commentary to ABA Standards Rule 7.3, a reprimand is usually the appropriate sanction when a lawyer's conduct violates a duty owed to the profession. Such a sanction serves to inform the public "and other members of the profession that this behavior is improper." ABA Standards Rule 7.3 cmt.

[¶ 30.] A judgment of public censure on both violations will be entered against Charles E. Light, Jr. He will be responsible to reimburse the Unified Judicial System and the State Bar of South Dakota for all reasonable costs and expenses generated as a result of this proceeding.

[¶ 31.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

does not acknowledge that his conduct was improper, and therefore it follows that he does not recognize a need for restitution.