2001 SD 148

**In the Matter of the DISCIPLINE OF Timothy J. WILKA, as an Attorney at Law.**

**No. 21856.**

Supreme Court of South Dakota.

Argued Nov. 16, 2001.

Decided Dec. 26, 2001.

Rory King of Siegel, Barnett and Schutz, Aberdeen, South Dakota, Attorney for Timothy J. Wilka.

Robert B. Frieberg of Frieberg, Rudolph & Nelson, Beresford, South Dakota and Laurence J. Zastrow, Deputy Board Counsel, Disciplinary Board of State Bar, Pierre, South Dakota, Attorneys for Disciplinary Board.

GILBERTSON, Chief Justice.

[¶ 1.] Attorney Timothy J. Wilka (Wilka) was reported to the Disciplinary Board of the State Bar of South Dakota by Second Circuit Judge Glen Severson for violations of the Model Rules of Professional Conduct, stemming from Wilka's use of an incomplete drug report during a visitation hearing and his misleading responses to Judge Severson's questions regarding the report. The Board recommended discipline in the form of a public censure. We agree.

## FACTS AND PROCEDURE

[¶ 2.] Wilka, a graduate of the University of South Dakota School of Law, was admitted to practice in South Dakota in 1983. He is currently engaged in private practice with one associate in Sioux Falls, South Dakota.

[¶ 3.] In July 2000, Wilka was representing Travis Van Overbeke (Client) in a divorce action against Carla Van Overbeke (Mother). Mother was seeking to restrict Client's visitation rights with his three-year-old daughter to supervised visitation on the basis that Client was using methamphetamines. Second Circuit guidelines regarding child visitation provide that if either parent is using drugs, visitation may be suspended. *See* Guideline 1.17c. Additionally, Mother had deprived Client of visitation. Therefore, Client responded with a cross motion to hold Mother in contempt. A hearing was scheduled before Judge Severson for July 31, 2000.

[¶ 4.] In preparation for the hearing, Wilka counseled Client to undergo a urinalysis test for methamphetamines at Avera McKennan Hospital in Sioux Falls. Client was tested on July 18, 2000. However, the test conducted by McKennan screened for a battery of drugs. While Client tested negative for methamphetamines, he did test positive for cannabinoids, which signaled recent use of marijuana.

[¶ 5.] The lab technician who performed the analysis telephoned the results to Wilka, who later received a printed report of the substance abuse screen. The screen showed the positive result for cannabinoids and a "not detected" result for seven other substances, including methamphetamines. Wilka then contacted the technician and informed her that, because there were no allegations of marijuana use in his case, he needed a report only indicating the methamphetamine results. He requested a new test be completed, one that screens only for methamphetamine use. The technician informed Wilka that they were unable to separate the screen but that she could provide him with a second report, one without the cannabinoids result. The technician accomplished this by simply tearing or cutting off the bottom portion of the drug screen results, omitting the positive result for cannabinoids.

[¶ 6.] Following the receipt of the partial report, Wilka made a copy of the report and sent it to opposing counsel, Doug Thesenvitz (Thesenvitz), to refute the charge of methamphetamine use by Client.

Thesenvitz had indicated that he would withdraw his motion for supervised visitation if Client tested negative for methamphetamine use. As a former prosecutor, however, Thesenvitz was apparently familiar with the drug screen report and noticed that the cannabinoids result was conspicuously missing. Therefore, he decided to proceed with the hearing.

[¶ 7.] During the July 31 hearing, Wilka had the partial report marked as Exhibit A and presented it to Client's wife initially for impeachment purposes on cross-examination. Wilka then asked that the partial report be admitted into evidence and it was received by the court. Immediately upon admission, the court asked "Is this cut off or is this the entire—" Wilka responded, "That's what I was provided by the hospital, Your Honor." Again, the court inquired "Is this the entire thing?" Wilka replied "That's what I have Judge. That's what I asked them to screen for."

[¶ 8.] Before closing statements, the court again addressed the partial report by stating "Mr. Wilka, this wasn't offered for the truth of what the results are. It was—" Wilka responded with "—to show that on July 18th there was no methamphetamine or any of the other drugs detected in his system." The court informed Wilka that the irregularities of the partial report, its torn uneven appearance, made the report "suspect" and it was not competent evidence. Wilka responded "I understand. This is exactly what was provided to me by the people at McKennan Hospital, and if you don't want to receive it, Your Honor, then I understand." Finally, the court ordered Client to undergo an additional drug screen, which came back negative for all drugs, and directed Wilka to provide a certified result of Exhibit A. Wilka did disclose the entire report to the court and opposing counsel while the case was still pending, with no apparent harm being done to either party.

[¶ 9.] Judge Severson reported Wilka's conduct to the Minnehaha County State's Attorney, the Disciplinary Board and to this Court. Criminal charges pursuant to SDCL 22–11–21, 22–11–22 and 22–29–6 were initiated by the State's attorney but were ultimately pled down to a civil contempt charge.[1] On November 7, 2000, Wilka appeared before Judge Severson and entered the following statement:

> Your Honor, I sincerely apologize to the Court for failing to fully disclose to the Court that the report I offered as evidence on July 31, 2000, is incomplete. My answers to the Court's questions were misleading and I am sorry.

Wilka was found in contempt and fined $100.

[¶ 10.] After the disciplinary hearing was conducted on June 15, 2001, the Board concluded that Wilka had violated the following Rules of Professional conduct: 3.3(a)(1), (2) and (4)[2] and 3.3(b) concerning candor toward the tribunal; 3.4(a) concerning fairness; 4.1(a) concerning truthfulness; and 8.4(a), (c) and (d) concerning professional misconduct. The Board also found that Wilka "showed little genuine remorse for his conduct" and recommended public censure.

[¶ 11.] The Referee disagreed. The Referee concluded as a matter of law that Wilka did *not* violate the following rules: 3.3(a)(1) because his statements to the

---

1. The State's attorney also elected to notify the press of the contempt proceedings.

2. Both the Board and the Referee find Wilka guilty of violating Rule 3.3(a)(4)(b). This rule, however, does not exist. We presume the Board and the Referee intended, instead, to refer to Rules 3.3(a)(4) and 3.3(b), which complement each other.

court were not false; 3.4(a) because he did not obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value; or 4.1(a) because the report sent to Thesenvitz was not a false statement of a material fact and he had no obligation to disclose the second report revealing marijuana use.[3] The Referee did, however, find that Wilka violated the following rules: 3.3(a)(2) because he failed to answer the court's questions and therefore failed to reveal a material fact; 3.3(a)(4) not because the report itself was false, but because Wilka's evasive answers purported it to be something other than incomplete; 8.4(a) because a violation of the Rules of Professional Conduct is professional misconduct; 8.4(c) because he was deceitful in that his answers to the court were misleading;[4] and 8.4(d) because Wilka failed to answer the plain and understandable questions of the court. Finally, the Referee made a finding of fact that "without hesitancy and without a doubt, [ ] [Wilka] is very remorseful and genuinely sorry for what has occurred." Additionally, he noted that Wilka apologized to Judge Severson "on three separate occasions, once in person, once during the contempt proceeding, and again during the disciplinary proceeding," and that not only did he receive his contempt citation in open forum in Sioux Falls with considerable press coverage, he was also charged criminally. As a result, the Referee concluded that Wilka "has been held sufficiently accountable" and recommended discipline by way of private censure. Thus, the only question before this Court is:

Whether submitting an incomplete report into evidence and refusing to fully answer the questions of the court regarding that evidence, thereby misleading the court, warrants a public censure.

## STANDARD OF REVIEW

[¶ 12.] We carefully consider the Board's and the Referee's findings of fact, as they had the advantage of seeing and hearing the witnesses. *Matter of Claggett*, 1996 SD 21, ¶ 9, 544 N.W.2d 878, 880 (citing *In re Discipline of Jeffries*, 500 N.W.2d 220, 225 (S.D.1993)). We do not, however, give particular deference to either the Board's or the Referee's conclusions of law or recommended sanctions. *Id.* (citing *In re Discipline of Dana*, 415 N.W.2d 818, 822 (S.D.1987)). "The ultimate decision for discipline of members of the State Bar rests with this Court." *Id.* (quoting *Jeffries*, 500 N.W.2d at 225) (citation omitted).

## ANALYSIS AND DECISION

[¶ 13.] In determining the appropriate discipline, this Court reviews the totality of the circumstances leading to the attorney's misconduct. *See Matter of Discipline of Walker*, 254 N.W.2d 452 (S.D. 1977). Not only do we consider the attorney-client relationship and the conduct in the instant case, but we also consider the prior record of the attorney. *Matter of Discipline of Bihlmeyer*, 515 N.W.2d 236, 238 (S.D.1994) (quoting *In re Goodrich*, 88 S.D. 146, 216 N.W.2d 557, 559 (1974)) (citations omitted). Wilka's conduct in this case, as well as his prior record,[5] lead us to

---

3. Discovery was available to Thesenvitz.

4. SDCL 20–10–1(3) provides that suppression of a fact by one whom is bound to reveal it is deceit.

5. Wilka has had 10 complaints filed against him and investigated by the Disciplinary Board since 1990. Four of those complaints were dismissed. For the remaining six, he has received discipline in the form of two cautions, two admonitions and two private reprimands.

conclude that public censure is appropriate.

[¶ 14.] "This Court has previously imposed public censure for misrepresentations to the court." *Bihlmeyer*, 515 N.W.2d 236 at 238 (holding public censure appropriate for attorney who misrepresented a fee agreement to a workers' compensation tribunal) (citations omitted). *See also Matter of Discipline of Mines*, 523 N.W.2d 424 (S.D.1994) (holding public censure appropriate for attorney who failed to remedy inadvertent misrepresentation relied upon by the court in resolving proceeding against attorney); *Matter of Discipline of Schmidt*, 491 N.W.2d 754 (S.D. 1992) (holding public censure appropriate for attorney who intentionally omitted required affidavit that nonresident attorney participating in trial had not been subject to disciplinary action); *Matter of Discipline of Rensch*, 333 N.W.2d 713 (S.D. 1983) (holding public censure appropriate for attorney who misrepresented to judge status of fee arrangement with purportedly indigent defendant in criminal prosecution). While Wilka may not have directly lied to the court, he intentionally evaded the plain and understandable questions of Judge Severson. In doing so, he misled the court and misrepresented the evidence as being more than it was.

[¶ 15.] Clearly, the requirement of candor towards the tribunal goes beyond simply telling a portion of the truth. It requires every attorney to be fully honest and forthright.

> We cannot overemphasize the importance of attorneys in this state being absolutely fair with the court. Every court ... has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it. Therefore, candor and fairness should characterize the conduct of an attorney at the beginning, during, and at the close of litigation.

*Schmidt*, 491 N.W.2d at 755 (citing H. Drinker, Legal Ethics 74 (1953)). There is no allowance for interpretation.

[¶ 16.] Wilka's intent to mislead the court is not mitigated by his concerns over Client's right to confidentiality. The dilemma in which Wilka found himself was one of his own making. Options other than evading the questions of the court remained open to him.

> It is absolutely necessary that each member of the bar comprehends the great responsibility that every person who has the privilege to practice law must strive for: to be a person of unquestionable integrity as he or she deals with the rights of people before the bar. A practitioner of the legal profession does not have the liberty to flirt with the idea that the end justifies the means, or any other rationalization that would excuse less than complete honesty in the practice of the profession. Certainly, our Rules of Professional Conduct allow no such flirtation.

*Mines*, 523 N.W.2d at 427. We respect Wilka's desire to represent Client without betraying confidentiality. Nevertheless, there is a line that even the zealous advocate cannot cross. Herein, the referee found Wilka's conduct to be "deceitful and he misled Judge Severson and this was intentional in nature." Such conduct clearly crosses the line into improper and unprofessional conduct.

[¶ 17.] Wilka argues that what he has had to endure because of this incident already amounts, in reality, to a public censure. He points to having been the subject of criminal investigations, the recipient of a $100 fine for civil contempt and to the corresponding press coverage that apparently was substantial. We have consistently refused to recognize such claims

for leniency to avoid professional discipline. *Matter of Discipline of Hopewell*, 507 N.W.2d 911, 917 (S.D.1993); *In re Discipline of Dorothy*, 2000 SD 23, ¶ 40, 605 N.W.2d 493, 505. The purpose of a criminal prosecution is to punish a crime against the State. The purpose of civil contempt is to punish the wrongdoer. The purpose of attorney disciplinary proceedings is not to punish the attorney anew, but rather to take sufficient measures for the protection of the public and its legal system from a repetition of these types of incidents. *Hopewell,* 507 N.W.2d at 916. Moreover,

> under Art. V, § 12 of our constitution, this Court, and not the media nor any third party is solely charged with the responsibility for determining what is appropriate discipline in an attorney misconduct case.

*Dorothy,* 2000 SD 23 at ¶ 40, 605 N.W.2d at 505 (citing *Hopewell,* 507 N.W.2d at 916).

[¶ 18.] The Referee also found that Wilka was "remorseful and contrite." When he appeared before this Court, he personally expressed this remorse. At this point in these proceedings, we have no reason to doubt the sincerity of his statement.

[¶ 19.] Therefore, based on a totality of the circumstances, Timothy J. Wilka is hereby publicly censured. SDCL 16–19–35(4). In accordance with this censure, we require Wilka to submit an affidavit addressed to this Court within 30 days from the date of this opinion in which he states under oath that:

a) he has reviewed the Rules of Professional Conduct;

b) he recognizes fully that his conduct (in evading the questions of and misleading the court with respect to the admission as evidence of the partial drug report) violated the Rules of Professional Conduct by which he is bound; and

c) he pledges he will devote every effort in his future practice to fully abide by the South Dakota Rules of Professional Conduct;

In addition, we require that Wilka pay the Clerk of this Court for the expenses of these proceedings within 30 days of the date that he is notified of the amount thereof.

[¶ 20.] SABERS, AMUNDSON and KONENKAMP, and, GORS, Acting Justice, concur.