**In the Matter of the DISCIPLINE OF Gustav K. JOHNSON, as an Attorney at Law.**

**No. 17424.**

Supreme Court of South Dakota.

Argued on Rehearing Feb. 10, 1993.

Decided May 19, 1993.

R. James Zieser, Disciplinary Bd. of State Bar, Tyndall, for complainant Disciplinary Bd.

Donald R. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for respondent Johnson.

MILLER, Chief Justice (on rehearing).

On August 12, 1992, this Court determined Gustav K. Johnson had not preserved his right to practice law and we ordered him disbarred. *In re Discipline of Johnson*, 488 N.W.2d 682, 685 (S.D.1992) (*Johnson I*). We later granted Johnson's petition for rehearing. We now determine the judgment of disbarment of Johnson will be vacated and that Johnson will be suspended from the practice of law for a period of two years beginning August 12, 1992, the effective date of his disbarment.

## FACTS

A more complete factual background can be found at *Johnson I,* so only a brief outline will be restated here. Johnson was admitted to the practice of law in this state in 1984. In 1987, he became a Pennington County Deputy State's Attorney and continued this employment until 1990. Though primarily a civil lawyer in the state's attorney's office, he nonetheless represented the State at various stages of criminal proceedings as well. In 1990, Johnson was contacted by law enforcement officers concerning his alleged illegal drug use. Johnson entered a guilty plea to a Class 2 misdemeanor charge of possession of marijuana.[1]

The Disciplinary Board of the State Bar of South Dakota conducted an investigation. At a hearing before the Board, Johnson freely admitted he had possessed and used marijuana as many as one hundred times since his admission to the Bar and had used cocaine at least once. The Board found such conduct to be in violation of the criminal statutes of the State of South Dakota (SDCL 22–42–5 makes possession of cocaine a Class 5 felony) and to be in violation of several of the Canons of the Code of Professional Responsibility and the Rules of Professional Conduct. The Board recommended formal disciplinary proceedings. This Court directed the Board to file a formal accusation and a Referee was appointed. After an evidentiary hearing, the Referee also made recommendations to this Court.

A hearing was held before this Court on December 4, 1991, to determine the appropriate discipline to be imposed. This Court did not adopt the Referee's recommendation that Johnson be suspended for a period of ninety days from the practice of law under various conditions. Rather, Johnson was ordered disbarred. However, as John-

---

1. The maximum penalty for a Class 2 misdemeanor charge at that time was "thirty days imprisonment in a county jail or one hundred dollars fine, or both." SDCL 22–6–2(2).

son points out in his petition for rehearing, three Justices expressed in that decision a preference for a suspension.

We granted rehearing and we view the issues presented by Johnson as facets of this single issue: What is the appropriate discipline of an attorney who uses illegal drugs while licensed to practice law in this state? Due to the difficulty of this question, made more difficult by the fact that at least some of Johnson's illegal drug use occurred while he was a deputy state's attorney, we took the extraordinary step of again hearing oral arguments.

## DISCUSSION

We find our discussion in *In re Discipline of Jeffries*, 500 N.W.2d 220 (S.D. 1993), of this date, to be applicable here as well as *Jeffries'* standards for our consideration of the findings and recommendations of the Disciplinary Board and Referee.

## DECISION

■ Johnson has been convicted on only one Class 2 misdemeanor charge of possession of marijuana. As this conviction is not of the type of "serious crime" for which we have previously ordered an attorney disbarred, we adopt our reasoning from *Jeffries* to find our previous order of disbarment is not an appropriate discipline at this time. Therefore, although Johnson has, by his illegal drug use while an attorney, joined those "few lawyers who 'are the scandal of the profession,' " *In re Egan*, 37 S.D. 159, 166, 157 N.W. 310, 312 (1916), our prior Judgment of Disbarment of Johnson is vacated.

■ Nevertheless, Johnson's conduct does warrant discipline. To Johnson's credit, he freely admits his regular illegal drug use while an attorney was part of his "life style" which included the use of cocaine on at least one, and possibly more, occasions. Johnson admits this conduct was "incredibly stupid" and wrong. Johnson has used illegal substances since he was in high school. Although Johnson asserts he does not have a chemical dependency and asserts he is currently drug free, we are, nonetheless, concerned by the lack of a formal evaluation of Johnson's actual dependency status.

We find it particularly objectionable that Johnson's illegal drug use spanned the time during which he was a deputy state's attorney. Although Johnson may never have prosecuted an entire drug case during his tenure with that office, he did participate in criminal arraignments and sentences and was in a position to prosecute an entire drug case. Nevertheless, Johnson's drug use does not appear to have occurred on the job and there is no evidence that his illicit drug use adversely affected his abilities as an attorney and deputy state's attorney. There is extensive testimony that Johnson has been a properly prepared and professional lawyer who has had no complaints lodged against him by a client, attorney or judge.

In light of all the evidence, we find Johnson has, by his conduct, severely tarnished the image and integrity of the Bar. Balancing the aggravating and mitigating circumstances before us, *In re Discipline of Simpson*, 467 N.W.2d 921, 923–24 (S.D. 1991) (Henderson, J., specially concurring), and considering especially his status as a deputy state's attorney, his misdemeanor conviction, his long-term illegal drug use, his remorse, the absence of harm to the public, his cooperation with law enforcement and the Disciplinary Board, and his apparent lack of a chemical dependency and apparent success at leading a drug-free life, we determine Johnson has not demonstrated to this Court that he is a fit and proper person to continue to practice law.

Therefore, pursuant to SDCL 16–19–22, an order will be entered directing that Johnson be suspended from the practice of law for a period of two years effective August 12, 1992, the date of this court's prior judgment of disbarment. During the period of Johnson's suspension from the practice of law, he is directed to (1) submit proof to the Disciplinary Board that he has been evaluated by a certified drug counselor to determine whether or not he is a candidate for any type of treatment for any chemical dependency; (2) in the event treat-

ment is recommended, undertake and successfully complete any recommended courses of treatment and regularly submit proof of compliance to the Disciplinary Board; (3) refrain entirely from the use of illicit drugs; (4) perform one day of public service per month at the direction of the presiding judge of the judicial circuit wherein he resides; and (5) be available to share and discuss with lawyers and students the (a) choices he made in developing a lifestyle encompassing the use of illegal drugs and (b) the effects of his lifestyle on himself, others and the Bar. That part of our prior judgment which ordered Johnson to reimburse the State Bar for its itemized allowable expenses remains in effect and includes the itemized allowable expenses for this rehearing.

We emphasize that Johnson's reinstatement to practice law is not automatic at the expiration of his two-year period of suspension. He must first file a petition for reinstatement accompanied with a deposit to cover the expected costs of his reinstatement proceeding and then demonstrate to this Court

> by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

SDCL 16–19–84; *In re Reinstatement of Trygstad*, 435 N.W.2d 723 (S.D.1989); *In re Reinstatement of Husby*, 426 N.W.2d 27 (S.D.1988). Only then will we issue an order reinstating Johnson, thus allowing him to resume the practice of law. SDCL 16–19–83.

Judgment will be entered accordingly.

WUEST, J., concurs.

AMUNDSON, J., concurs in result.

HENDERSON and SABERS, JJ., dissent.

AMUNDSON, Justice (concurring in result).

Since this case was originally decided, I have had numerous opportunities to revisit it. After this further reflection, I am still convinced that the discipline outlined in my dissent in *In re Discipline of Johnson*, 488 N.W.2d 682, 687 (S.D.1992), was the appropriate discipline under the facts in this case. Since the appropriate discipline as recommended in my dissent was not acceptable to a majority of this court, the question presently before this court is whether or not disbarment is the appropriate discipline to be imposed on Johnson.

As is evident from my previous writing, I have strongly felt that disbarment in this case was simply and plainly punishment. Therefore, having to elect between punishment (disbarment) or the discipline of suspension for a period longer than I deem appropriate or necessary, I must select the discipline recommended by the majority as the best of two objectionable options.

HENDERSON, Justice (dissenting).

Reference is made to my concurring opinion found in *Matter of Discipline of Johnson*, 488 N.W.2d 682, 686 (S.D.1992). Therein, I joined the majority opinion holding that Johnson be disbarred. I now join the minority holding that Johnson be disbarred.

There are, of course, different viewpoints in appellate courts such as majority and minority holdings. A reader of the law will note, from time to time, special concurrences or concurrences in result. Rarely, ever so rarely, do we read what I would term an "eclectic decision." An "eclectic decision" is a decision composed of elements, methods, styles, precedent and doctrine from various sources. In the end, it is a composite of compromise to such an extent that it attempts to serve splinters of irreconcilable positions. In both *Jeffries*, handed down contemporaneous herewith, and instanter, we have two "eclectic decisions." Thereby, in attempting to further a decision of compromise and several legal purposes, it fails to attain an identifiable correctness. Not only is there a failure of identifiable cor-

rectness, there is, also, an antithetical vote by one of the concurring Justices to this opinion. Apparently, still not believing the disciplinary measure taken is proper, one Justice votes for the majority decision because it is "the best of the objectionable options."

Both Jeffries and Johnson were prosecutors in Pennington County. As the Chief Justice has pointed out, Johnson represented the State of South Dakota in criminal proceedings. They were associates, friends, fellow prosecutors, and men, by their own statements, who knew what they were doing was subserving the law. Essentially, neither now wish to ethically account for their wrongdoing. At pages 9 and 10, of a transcript concerning a hearing before the Disciplinary Board on October 26, 1990, at the Ramada Inn, Sioux Falls, South Dakota, testimony of Jeffries reveals that Johnson and he (and at least one other Deputy State's Attorney in Pennington County) smoked marijuana together; Jeffries and Johnson used cocaine together twice. *See* Hearing Transcript, page 10. While Johnson acted in a role as a Deputy State's Attorney, he shared marijuana with his friends at least 100 times. This factual scenario is supported by the record. At the initial argument before this Court in December, 1991, Johnson openly admitted he had been using drugs since he was sixteen years of age. At that time, Johnson had never undergone counseling for his drug habit nor was he contemplating any treatment and/or counseling.

Johnson's case is distinguishable from *Matter of Discipline of Hopp*, 376 N.W.2d 816 (S.D.1985); *Matter of Discipline of Brende*, 366 N.W.2d 500 (S.D.1985); *Matter of Discipline of Kessler*, 366 N.W.2d 499 (S.D.1985), and *Matter of Discipline of Strange*, 366 N.W.2d 495 (S.D.1985). Not one of the above lawyers were representing the people of South Dakota and taking their money as agents of the state when they used drugs. Not one of these lawyers were prosecutors. Johnson was a servant of the public (the same as Jeffries) and was responsible to try to eradicate the drug culture, which pervades our Nation, not aid it and give it an implied blessing. Both Johnson and Jeffries applied a double standard and in so doing infected the criminal justice with poison. James Zieser, longtime counsel for the Disciplinary Board, in argument before the Supreme Court stated emphatically: "Johnson gave the legal profession a black eye." Zieser also expressed: "He admitted to committing felonies." *In Matter of Discipline of Hendrickson*, 456 N.W.2d 140, 141 (S.D.1990) we held:

> Disbarment is warranted when it is clear that the protection of society requires such action *or* where the maintenance of respect for courts and judges *or* the respectability of the legal profession itself demands such action. (Emphasis supplied mine).

As I expressed in my dissent in *Jeffries*, handed down contemporaneous herewith:

> As the United States Supreme Court has held, the prosecutor is "a servant of the law," not an advocate of an ordinary party. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As such, prosecutors are held to a higher standard lest the "special significance to the prosecutor's obligation to serve the cause of justice" be lost. *Arizona v. Youngblood*, 488 U.S. 51, 63, n. 2, 109 S.Ct. 333, 340, 102 L.Ed.2d 281 (1988) (Blackmun, J., dissenting) (quoting *Agurs*, 427 U.S. at 111 [96 S.Ct. at 2401]).

As a people, we cannot tolerate or condone drug activity by prosecutors. The maintenance of a healthy, free society forbids it. Respect for the courts in our land demands it. And a respect for the legal profession cannot survive with its existence.

SABERS, Justice (dissenting).

I respectfully dissent.

I support disbarment because:

(1) Johnson admits to the commission of 100 misdemeanors (possession and use of marijuana) and one felony (use of cocaine) even though his only conviction was for possession of marijuana—a misdemeanor.

(2) The conviction of a serious crime under SDCL 16–19–36 * resulted in disbarment in: *In re Discipline of Hendrickson,* 456 N.W.2d 140 (S.D.1990); *In re Discipline of Janusz,* 439 N.W.2d 559 (S.D.1989); *In re Discipline of Coacher,* 438 N.W.2d 549 (S.D.1989); *In re Discipline of Moeckly,* 401 N.W.2d 537 (S.D.1987); *In re Discipline of Reutter,* 379 N.W.2d 315 (S.D.1985); *In re Discipline of Looby,* 297 N.W.2d 487 (S.D.1980); and *In re Discipline of Voorhees,* 294 N.W.2d 646 (S.D.1980).

(3) Commission of one felony and 100 misdemeanors is at least as serious as the conviction of a serious crime under SDCL 16–19–36.

(4) Despite the admission of committing one felony and 100 misdemeanors, Johnson was only charged with a Class 2 misdemeanor. Should an attorney benefit twice from a very favorable plea bargain and sentence? "[T]he image and integrity of the legal profession is damaged every time a court permits an attorney guilty of such serious misconduct to practice law again." *In re Discipline of Simpson,* 467 N.W.2d 921, 925 (S.D. 1991) (Sabers, J., dissenting); *see also Simpson,* 467 N.W.2d at 925 (Wuest, J., dissenting).

(5) "The *commission* of "serious crimes" implicates the need to protect the public and the profession." *Hendrickson,* 456 N.W.2d at 141 (emphasis added).

(6) I do not agree with the "popular concept" that there are too many lawyers in the United States today. I do agree that there are too many lawyers whose conduct indicates that they place too little value on their right to practice law. The right to practice law must not only be earned, but preserved. The conduct of Johnson clearly indicates that he placed too little value on his right to practice law. In my view, he has forfeited his right to practice law by his conduct. I would require him to re-earn the right to practice law and I vote for disbarment.

I have reviewed the facts and relevant factors in the majority opinion and compared them with *Johnson I.* I find no new facts, factors or real change except for the mind and vote of a single Justice.

We should stand firm on our decision in *Johnson I* and require Johnson to re-earn the right to practice law.

---

* **SDCL 16–19–36. Attorney's conviction of serious crime to be reported to Supreme Court— Definition of serious crime.** The clerk of any court in this state in which an attorney is convicted of a serious crime shall within ten days of said conviction transmit a certificate thereof to the Supreme Court. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.