**In the Matter of the DISCIPLINE OF Bert OLSON, as an Attorney at Law.**

No. 18803.

Supreme Court of South Dakota.

Argued March 22, 1995.

Decided Aug. 30, 1995.

 

a) Olson allegedly smuggled cigarettes to said defendant while defendant was incarcerated, in violation of SDRPC 4.2.

b) Olson requested that Sheriff allow defendant to ride alone with him to Codington County Jail without consent of defendant's counsel.

2) Olson failed to comply with courtroom decorum in manner of dress in violation of SDRPC 8.4(d).

3) Olson signed a complaint for assault against a person whom he had tried to arrest. He then tried to both prosecute and testify as a witness violating SDRPC 3.7.

4) Olson was growing marijuana with a friend in violation of SDRPC 8.4.

a) Olson wrote "immunity granted" on a box of marijuana plants and signed his signature in violation of SDRPC 8.4.

b) Olson pleaded guilty to misdemeanor possession of marijuana in violation of SDRPC 8.4.

c) Olson admitted at his sentencing hearing for possession of marijuana that he had continued to use the drug after his arrest and entry of guilty plea.

d) Olson advocated the legalization of marijuana to the press in violation SDRPC 8.4.

Olson was summoned to a hearing before Board on June 15, 1993, but failed to appear. He was given notice of a second Board hearing, set for October 14, 1993. Represented by counsel, Olson attended this meeting and admitted a possible chemical dependency to marijuana. He testified that he planned on undergoing chemical dependency treatment at the end of October 1993. He later changed his mind, however, and objected to Board's findings incorporating his prior assertions of addiction. Olson requested a third hearing and asked Board to consider his objection. On April 1, 1994, Olson came before Board to state that he was not chemically dependent on marijuana. He further indicated that he had smoked marijuana the preceding winter.

R. James Zieser, Tyndall, for complainant Disciplinary Board.

Lee M. McCahren, Vermillion, for respondent Olson.

AMUNDSON, Justice.

In this disciplinary proceeding, the Disciplinary Board (Board) of the State Bar of South Dakota appeals the Referee's recommendation that Bert Olson (Olson) be suspended from the practice of law for two years.

## FACTS

Olson was admitted to the practice of law in South Dakota on September 22, 1992. Soon thereafter, he was elected state's attorney of Deuel County. Olson took an oath of office, and assumed that position on January 3, 1993. Within a few months, Olson was accused of violating numerous South Dakota Rules of Professional Conduct. These allegations included:

1) Olson, while state's attorney, communicated with a defendant without the consent of defendant's counsel, in violation of South Dakota Rule of Professional Conduct (SDRPC) 4.2.

Based on testimony and its investigation, Board found the complaints against Olson meritorious and proposed formal disciplinary action. It recommended Olson be suspended from the practice of law for three years. Board set conditions on Olson's readmission that he: (1) seek treatment for chemical dependency; (2) abstain from the use of all controlled substances; (3) agree to random blood and/or urinalysis tests; (4) attend three Alcoholics Anonymous and/or Narcotics Anonymous meetings per week; and (5) not be convicted of any criminal offenses.

A referee was appointed to Olson's case and considered Board's recommendations on November 16, 1994. After hearing testimony and reviewing Board transcripts, the referee recommended a two-year suspension. The referee reduced Board's recommended suspension because, in his opinion, Olson did not violate SDRPC 4.2 (improperly communicating with a defendant outside the presence of his attorney) or SDRPC 8.4(d) (manner of dress in court). In addition, the referee found Olson's statements to the press regarding legalization of marijuana constitutionally protected speech and, therefore, not in violation SDRPC 8.4.

Board appeals.

## ISSUE

DO OLSON'S VIOLATIONS OF THE SOUTH DAKOTA RULES OF PROFESSIONAL CONDUCT WARRANT SUSPENSION FROM THE PRACTICE OF LAW FOR THREE YEARS AS RECOMMENDED BY THE DISCIPLINARY BOARD?

## DECISION

■ Board and the referee conducted hearings, made findings, conclusions, and recommendations that Olson's conduct be disciplined. Reviewing the proposed discipline, we carefully consider their findings as they had the opportunity to observe the witnesses' demeanor. "Although their findings are not conclusive upon this Court, if they 'are supported by the record, they will not be disturbed.'" *In re Jeffries*, 500 N.W.2d 220,

225 (S.D.1993) (quoting *In re Dana*, 415 N.W.2d 818, 822 (S.D.1987)).

■ However, "it does not necessarily follow that we will ... adopt [Board or referees'] recommendations, ... as 'we give no particular deference to [their] recommended sanctions.'" *Jeffries*, 500 N.W.2d at 225 (quoting *Dana*, 415 N.W.2d at 822) (citations omitted). "'[T]he ultimate decision for discipline of members of the State Bar rests with this court.'" *Id.*

■ This court has stated that an attorney "owes a duty to his profession and to the court from which he has received his license, as well as to his client." *Jeffries*, 500 N.W.2d at 222 (citation omitted). "'The right to practice law is a privilege granted upon demonstration of satisfactory moral fitness and adequate legal and general learning. To continue this privilege, a lawyer must maintain his fitness and qualifications.'" *Id.* (quoting *In re Strange*, 366 N.W.2d 495, 497 (S.D. 1985) (citations omitted)).

■ "As officers of this court, attorneys are charged with obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude."

*Jeffries* at 222 (quoting *In re Parker*, 269 N.W.2d 779, 780 (S.D.1978)).

■ Disciplinary actions are conducted to "'protect the public from further wrongdoing on the part of the attorney, and if necessary, to remove from the profession one who has proved himself unfit to be entrusted with the duties and responsibilities of an attorney.'" *Jeffries* at 222–23 (quoting *Strange*, 366 N.W.2d at 497) (citations omitted). The appropriate discipline depends on the extent the public, and the image of the profession, has been harmed.

Board found that Olson violated the following South Dakota Rules of Professional Conduct:

Rule 3.7   Lawyer as Witness.

(a) A lawyer or another lawyer in the lawyer's firm shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

   (1) the testimony relates to an uncontested issue;

   (2) the testimony relates to the nature and value of legal services rendered in the case;

   (3) disqualification of the lawyer would work substantial hardship on the client; or

   (4) except as otherwise provided by statute.

Rule 4.2   Communication with Person Represented by Counsel.

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rule 8.4   Misconduct.

It is professional misconduct for a lawyer to:

.   .   .   .   .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

.   .   .   .   .

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official[.]

Olson's "recreational use" of marijuana, and subsequent conviction for possession thereof, are his most grievous violations and the focus of our comments. Olson committed these offenses while holding the office of state's attorney. Although Olson did not prosecute any drug cases while so employed, he was in the position to do so. *See In re Johnson*, 500 N.W.2d 215 (S.D.1993). It is further evident that Olson, jokingly or otherwise, attempted to use his office to "grant immunity" in regards to marijuana being grown in a box.

Unfortunately, this court has precedent by which to determine the appropriate discipline for state's attorneys' illicit use of drugs. In *Johnson*, the attorney was suspended for two years for being convicted on one Class 2 misdemeanor charge of possession of marijuana and "recreational use" of cocaine. *Id.* at 217. Like Olson, Johnson had not prosecuted drug cases. Johnson was remorseful for his conduct and testimony indicated that his drug use did not adversely affect his abilities as an attorney.

In a companion case, this court held a three-year suspension appropriate for a state's attorney's misdemeanor conviction of marijuana and admitted cocaine use. *Jeffries*, 500 N.W.2d at 225. Attorney Jeffries admitted a history of drug dependency, starting in high school. However, he realized the error of his ways, submitted to chemical dependency treatment, attended AA programs regularly, and remained drug-free.

Olson's conduct, like that of Johnson and Jeffries, works to "severely tarnish[ ] the image and integrity of the Bar." *Johnson*, 500 N.W.2d at 217. However, this court has recognized the importance of rehabilitation in fashioning appropriate discipline for attorneys. *In re Walker*, 254 N.W.2d 452 (S.D. 1977). In *Walker*, this court held that the attorney's alcoholism was not a defense to misconduct, yet his sincere and fruitful rehabilitative efforts warranted probation to encourage him to overcome his illness. *Id.* at 457. This case obviously lacks any evidence of rehabilitative efforts by Olson. Quite to the contrary, Olson continues on, even after the commencement of these proceedings, with his pursuit of recreation by smoking pot.

In presenting his case before Board, Olson was found to be both candid and honest. His motivation for improperly communicating with defendants and juveniles was due to lack of experience and guidance, not from bad intent. The referee found that Olson's drug use did not interfere with his duties or

directly harm the public. Furthermore, Olson admitted to Board at the October 14, 1993, hearing that he had an addiction to marijuana.

Olson, when appearing before this court, responded to questions from members of the Court:

Q ... Are you now chemically dependent?

A I am addicted to nicotine, Your Honor. I still smoke marijuana but I don't think I'm addicted to it.

Q You still smoke marijuana?

A Yes, sir.

.    .    .    .    .

Q But anyway, you think that all you have to do is uphold the constitution and the laws mean nothing.

A No, Your Honor, but in the case of private use of marijuana I believe that the constitution protects that privacy— its just something that hasn't been recognized by your honors yet.

Olson's claim for constitutional immunity from discipline for private smoking of pot rings hollow, and is still not recognized as a defense in attorney disciplinary proceedings in this jurisdiction. Olson's candor in response to the inquiries is laudable, but obviously discloses a complete lack of an understanding of the obligations one assumes when taking an oath to practice law.

Lack of experience and guidance might be a mitigating circumstance in certain disciplinary charges such as dress code, or lack of prosecutorial courtroom experience, but certainly not when the professional voluntarily elects to violate the laws which he has been sworn to uphold and enforce. Therefore, discipline is appropriate under the facts in this case. An order pursuant to SDCL 16–19–22 will be entered directing that Olson be suspended from the practice of law for a period of three years.

In addition, Olson's reinstatement to practice law is not automatic at the end of this time; rather, he must complete the following:

(1) Successfully complete a drug treatment and aftercare program;

(2) Abstain from the use of all controlled substances;

(3) Attend three Alcoholics Anonymous and/or Narcotics Anonymous meetings per week; and

(4) Not be convicted of any criminal offenses.

He must also cover all costs associated with his reinstatement proceeding, as well as demonstrate

by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

SDCL 16–19–84; *Jeffries,* 500 N.W.2d at 227 (citations omitted). Only upon satisfying these conditions will reinstatement be considered. SDCL 16–19–83.

Judgment will be entered accordingly.

SABERS, J., concurs.

MILLER, C.J., and KONENKAMP, J., concur with writing.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

KONENKAMP, Justice (concurring).

I concur with the majority opinion because a suspension accomplishes everything necessary to protect the public and maintain the integrity of the legal profession. If Olson continues his marijuana use and fails to strictly follow the conditions for reinstatement he will never regain his license to practice.

Olson was diagnosed as chemically dependent. He refuses to accept this, which would not surprise those who understand addictions. He also views his use of marijuana as a constitutional right for which cause he sees himself as an advocate, perhaps even a martyr. Nonetheless, people, including lawyers, are a valuable resource and should be given the opportunity to redeem themselves.

Countless persons have changed their lives by returning to sobriety through abstinence along with treatment, Alcoholics Anonymous, Narcotics Anonymous, prayer or other means.

Denial is part of addiction, but acceptance is the first step to change. Suspension allows a chemically dependent lawyer time to reassess and reform, with an opportunity for eventual reinstatement. Certainly, Olson's marijuana use deserves condemnation and he has been dealt with accordingly: he spent a month in jail following his criminal conviction and now we are suspending his license. Olson's suspension is equivalent to a disbarment unless he reforms: he can choose abstinence and treatment, which may lead to reinstatement, or he can continue his ruinous pursuit of marijuana, but not both.

MILLER, C.J., joins this writing and I am authorized to so state.