2004 SD 66

**In the Matter of the RECIPROCAL DISCIPLINE OF Alice L. ROKAHR as an attorney-at-law.**

No. 23222.

Supreme Court of South Dakota.

Considered on April 15, 2004.

Decided May 19, 2004.

Robert B. Frieberg, Beresford, South Dakota, Attorney for Disciplinary Board.

Alice L. Rokahr, Yankton, South Dakota, pro se.

GILBERTSON, Chief Justice.

[¶ 1.] Alice L. Rokahr, an attorney-at-law licensed in South Dakota, has filed notice with this Court as required by SDCL 16-19-71 that she was subjected to professional disciplinary action in another jurisdiction. For the reasons stated herein and because this matter was referred to, and previously determined by the South Dakota Disciplinary Board, we decline to impose reciprocal discipline. We instead conduct our own independent review of the disciplinary record.

## BACKGROUND

[¶ 2.] Rokahr is a Yankton, South Dakota attorney admitted to the practice of law in both South Dakota and Nebraska. Rokahr represented Clara Heine and her son Allen Heine. Rokahr represented Allen in a number of different capacities including individually, as the controlling partner of the Heine Feedlot Company and as a trustee for three separate trusts created by his father for the benefit of Allen's two nieces and one nephew.[1]

These three trusts would be terminated at the option of the beneficiaries at the age of twenty-one or automatically at the age of twenty-five. The trusts were at least partially funded with various parcels of land in South Dakota and Nebraska.

[¶ 3.] Certain land deeded in trust was operated by the Heine Feedlot Company and the rental payments were deposited in trust for the beneficiaries. At various times Rokahr drafted documents concerning the real property held in trust. Particularly relevant here is an easement Rokahr drafted that provided access to property held in trust for Allen's children. That easement provided access over and across land held in trust for Allen's nieces and nephew, of which he was trustee on their behalf. The easement was signed by Allen and his wife Marilyn in their capacity as trustees. According to Rokahr's testimony, the easement was dated and notarized by Rokahr on September 1, 1994, but was not recorded with the Yankton County Register of Deeds until March 6, 1995. These dates are particularly important because by March 1995 two of the trusts had terminated and Allen had no legal authority to act on those beneficiaries' behalf in executing this easement encumbering the property. Arlene Heine, the party who initiated the complaint against Rokahr, alleged that Rokahr backdated the document she notarized so that an easement could be obtained which benefited her client, Allen.

[¶ 4.] A Nebraska disciplinary referee found that there was clear and convincing evidence to support the allegation of misconduct. The Nebraska Supreme Court affirmed in part concerning the easement issue. The evidence supporting that finding was as follows: Rokahr's appointment

---

1. Allen and his brother were initially named trustees for each other's children. Family animosity between the two made this arrangement contentious.

calendar makes no mention of an appointment to have this document signed in September 1994. On February 22, 1995, Rokahr sent a letter to Allen indicating "Please find enclosed a copy of the Perpetual Easement ... on the parcel of land in Yankton County ... If this is acceptable, please let me know and we can make arrangements for its signing." Finally, Rokahr billed Allen for the preparation and signing of an easement on March 15, 1995.

[¶ 5.] The evidence supporting Rokahr's contention that she did not backdate the easement was her sworn testimony, Allen and Marilyn's sworn testimony and Rokahr's explanation in the Nebraska proceeding and before the South Dakota Disciplinary Board that:

● She did not specifically recall when the easement was signed or why it was not filed until March 6, 1995.

● She suspected that she found a draft of the easement and not realizing it had already been signed, forwarded it to Allen under the previously quoted cover letter to arrange for its signing. Thereafter, when she discovered her mistake, it was recorded.

● Rokahr indicated that she had poor billing practices and she probably didn't bill for the document until she discovered the draft she sent to Allen in February 1995.

## Nebraska Disciplinary History

[¶ 6.] A Nebraska disciplinary referee found by clear and convincing evidence that Rokahr had committed three ethical violations: (1) backdating the aforementioned easement; (2) colluding with Allen in backdating and filing the easement; and, (3) engaging in delay, deceit, and deception in the delivery of certain deeds to the beneficiaries. The referee also rejected Rokahr's testimony as not credible. The referee recommended Rokahr be suspended from the practice of law for six months. The Nebraska Supreme Court determined that clear and convincing evidence existed to support the findings of the referee that Rokahr backdated the easement and colluded with Allen in backdating and filing the easement. Counsel for Discipline of the *Nebraska Supreme Court v. Rokahr*, 267 Neb. 436, 675 N.W.2d 117, 128 (2004). The Nebraska Supreme Court rejected the referee's finding that Rokahr engaged in delay, deceit, and deception in the delivery of deeds to the beneficiaries. *Id.* at 130. The Nebraska Supreme Court ultimately suspended Rokahr from the practice of law for one year.[2] *Id.* at 131.

### South Dakota Discipline

[¶ 7.] Arlene Heine submitted a complaint against Rokahr to the South Dakota State Bar and later to this Court. The complaints were referred to the South Dakota Disciplinary Board. Thereafter, Rokahr submitted a self-report to the South Dakota Disciplinary Board of the pending Nebraska matter and a South Dakota investigation conducted by the Board ensued. The South Dakota Disciplinary Board consists of seven members, that being six members of the State Bar and one lay member. *See* SDCL 16–19–24. In addition, the Board retains its own legal counsel.

[¶ 8.] Arlene Heine, as the complainant, was informed of the pending investigation in South Dakota and invited to submit any and all information to the South Dakota Disciplinary Board. It appears from the record that information gathered by the Nebraska disciplinary prosecutor

2. Prior to the issuance of the referee's report or the later review by the Nebraska Supreme Court the South Dakota Disciplinary Board issued an admonishment to Rokahr.

was forwarded to the South Dakota Disciplinary Board. On December 12, 2002, Rokahr and her counsel appeared before the South Dakota Disciplinary Board. Rokahr was questioned by counsel for the Disciplinary Board and by the members individually. Rokahr maintained that the easement was not backdated though she conceded that during the course of her representation she failed to recognize conflicts of interest as they developed and too readily followed the desire of her client. Following that hearing, the Disciplinary Board unanimously entered the following admonishment:

> The Disciplinary Board of the State of South Dakota has considered the complaint of Arlene Heine, together with the testimony presented at the hearing and the submissions received in connection with that complaint. This letter shall constitute the Board's findings.
>
> The Board finds that you acceded to Allen's directions/ instruction too readily and that you failed to exercise independent professional judgment. A reality of the practice of law is that, on occasion, a lawyer must withdraw from representation of a client when the lawyer finds herself unable to exercise independent professional judgment or when the client refuses to accept the lawyer's advice. In addition, the Board finds that conflicts of interest did exist as between the beneficiaries of the trusts established for the grandchildren as became more apparent with the passage of time. You failed to recognize these conflicts in a timely fashion. The Board finds that these violations were unintentional and unlikely to be repeated. Therefore, the Board finds that the appropriate disposition of the complaint is an admonition to exercise independent professional judgment and to be more sensitive to conflicts arising during the course of representation.

> With the above stated admonition, this matter is concluded.

The Board further informed the complainant that "the Board found no evidence that Ms. Rokahr intentionally violated any rules of Professional Conduct." As previously mentioned, the South Dakota Disciplinary Board's hearing occurred before the Nebraska referee's final report or any decision by the Nebraska Supreme Court.

[¶ 9.] Thereafter, upon the conclusion of the Nebraska disciplinary proceeding, Rokahr sent notice to this Court as required by SDCL 16–19–71 advising of her discipline in Nebraska. Rokahr has requested that we deviate from imposing reciprocal discipline in South Dakota. The South Dakota Disciplinary Board has also requested that we not impose reciprocal discipline under these circumstances. Complainant maintains that the South Dakota discipline imposed was inadequate and has requested the imposition of reciprocal discipline.

## ANALYSIS

### ISSUE ONE

[¶ 10.] **Whether reciprocal discipline should be imposed as a result of Rokahr's Nebraska discipline even though an independent South Dakota disciplinary proceeding has already occurred.**

[¶ 11.] SDCL 16–19–71 requires an attorney disciplined in another jurisdiction to promptly inform this Court of such action. SDCL 16–19–71. "Except as provided in SDCL 16–19–74, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct *shall establish conclusively the misconduct* for purposes of a disciplinary proceeding in this state." SDCL 16–19–71 (emphasis added). SDCL 16–19–74 provides:

[T]he Supreme Court shall impose the identical discipline unless the board or the attorney demonstrates, or the Court finds that upon the facts of the record upon which the discipline is predicated it clearly appears;

    (1) That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

    (2) That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or

    (3) That the misconduct established warrants substantially different discipline in this state.

Where the Court determines that any of said elements exist, the Court shall enter such order as it deems appropriate. SDCL 16–19–74. Rokahr urges that SDCL 16–19–74(2) and (3) preclude imposition of reciprocal discipline in this instance. We decline to do so.

[¶ 12.] The reciprocal discipline rules have no provision for an instance such as this where two separate and distinct investigations occurred in each respective state. *See* SDCL ch 16–19. Moreover, those rules provide no guidance concerning the appropriate remedy when the two jurisdictions reach separate conclusions concerning the facts supporting the discipline. *See id.* Therefore, this case does not fall squarely within the framework of the reciprocal discipline provisions, or exceptions thereto, because the very "misconduct established" in the foreign jurisdiction was not found to have occurred in this jurisdiction.

[¶ 13.] In both disciplinary proceedings the most serious allegation of misconduct against Rokahr concerned the preparation, backdating, notarization and filing of an easement that benefited her client Allen, as opposed to the trust beneficiaries. The Nebraska referee and the Nebraska Supreme Court determined that clear and convincing evidence of such misconduct was established in their proceeding. However, the South Dakota Disciplinary Board found the other way, Rokahr did not engage in the backdating of the easement for the benefit of her client. In a report to this Court, the Disciplinary Board indicated its reasoning:

> The Board noted in its deliberations that it is not unusual for lawyers to inadvertently leave signed documents in the client's file causing delay in the recordation (something that the Board sees perhaps too often). Secondly, it is not unusual for lawyers to delay billing for concluded work, particularly with agricultural clients who many times pay their bills once a year on the selling of grain or calves. Missing from the Nebraska determination is the motive for back-dating the easement. Rokahr's client's children had a statutory easement existing in their favor and the easement was unnecessary. In fact, Rokahr's testimony was that she attempted to dissuade her client from preparing and recording the easement as it would simply result in discord among the family. Client insisted and Rokahr prepared the easement.[3]

---

3.  The Board continues that "it was this decision that prompted the Board to issue the two admonitions. The first was the failure to exercise independent professional judgment (*see* Rule 2.1). The easement was not needed and Rokahr recognized that fact but allowed her client to override her judgment. Secondly, she was admonished because in preparing the easement, it was in conflict with the rights of the children of the complainant who reasonably could have believed that Rokahr was also their lawyer."

Therefore, it appears that the primary explanation for this difference in discipline is the result of a credibility determination based on the observation of Rokahr as she testified on this topic. Given the competing factual and credibility determinations between jurisdictions, and the absence of South Dakota rules or case law concerning this type of proceeding, we turn to case law from other jurisdictions for guidance.

[¶ 14.] In addressing a similar situation, the District of Columbia Court of Appeals has determined that the imposition of reciprocal discipline is not automatic when there are competing investigations and sanctions in separate jurisdictions. *In re Perrin*, 663 A.2d 517, 522–23 (D.C.App. 1995). In reaching that determination, the court recognized:

> On its face, [the reciprocal discipline rule] requires the court to impose reciprocal discipline in *every* case in which a member of our Bar is disciplined elsewhere unless the attorney proves that at least one of the exceptions applies. Literal application, however, leads to absurd results. According to the strict terms of the Rule, we would be obliged to apply reciprocal discipline no matter how far our own proceedings had progressed, or even if they had been completed and if this court had already imposed a different sanction of its own, unless there was a major and substantial difference between the foreign state's practice and our own.

*Id.* Moreover, in determining whether reciprocal discipline should be imposed, consideration should be given to "the resources expended in this jurisdiction." *Id.* at 522. Furthermore,

> Each jurisdiction has its own statutes and rules. If the District's proceedings, based on its own standards and a careful evaluation of the attorney's conduct in light of those standards, conclude with the selection of one sanction, then it would surely be irrational to impose, instead, a different sanction which was selected on the basis of a different factual record under another jurisdiction's laws and rules.

*Id.* at 523. *See also In re Cerroni*, 683 A.2d 150, 151 (D.C.App.1996) (A court is not required to follow the doctrine of reciprocal discipline when independent proceedings have already been conducted in its own jurisdiction). Though it was not discussed in the Nebraska opinion, we note that this rationale would support Nebraska's decision to proceed in this matter despite the South Dakota admonition. Likewise, the Iowa Supreme Court has determined that a South Dakota disciplinary determination was not entitled to deference when the event had a significant nexus to that state and South Dakota did not consider the same disciplinary rules at issue in the Iowa proceeding. Committee on Professional Ethics and Conduct of the *Iowa State Bar Association v. Qualley*, 487 N.W.2d 327, 330 (Iowa 1992).

[¶ 15.] There is also the question of whether an attorney disciplinary decision of a separate jurisdiction must be given full faith and credit in this jurisdiction. Indeed, Rokahr raised this same argument as a defense to the Nebraska Disciplinary proceeding, contending that because the South Dakota Disciplinary Board had already investigated the complaint based upon the same set of facts, no further discipline should be imposed. The Nebraska Supreme Court rejected this argument and concluded that full faith and credit is not offended by the sanctioning of an attorney already disciplined in the state where the ethical violation occurred. *Rokahr*, 675 N.W.2d at 123–25 (citing *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002); *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427

(2001); *Kentucky Bar Ass'n v. Signer*, 533 S.W.2d 534 (Ky.1976)). We agree with the analysis of the Nebraska Supreme Court and for the same reason conclude that while its disciplinary decision concerning Rokahr is worthy of careful review and consideration by this Court, it does not require an identical sanction in South Dakota. *Id.*[4]

[¶ 16.] Consequently, because an independent disciplinary proceeding occurred in South Dakota, this matter was significantly connected to South Dakota (the easement pertained to South Dakota property) and considering the divergent findings and resulting discipline imposed in each jurisdiction, reciprocal discipline is not mandated or warranted in this instance. The more severe sanction of a one-year suspension imposed in Nebraska was the result of a factual finding that is in direct conflict with the finding of the South Dakota Disciplinary Board. This Court gives careful consideration to the findings of the Disciplinary Board because they have had the advantage of encountering the witnesses first hand. *In Re Discipline of Light*, 2000 SD 100, ¶ 9, 615 N.W.2d 164, 167. The South Dakota Disciplinary Board found no intentional rule violations after reviewing the evidence and hearing the testimony of Rokahr. Rather, the Disciplinary Board found unintentional rule violations concerning Rokahr's failure to identify conflicts of interest and failure to exercise independent professional judgment. It also determined that Rokahr was unlikely to commit these violations again and that her conduct warranted an admonishment.

[¶ 17.] In summary, it is clear that the facts of this case give us jurisdiction over this complaint. The complaint relates to events that occurred in South Dakota, concerns an attorney licensed in South Dakota and the parties involved in this complaint resided in South Dakota. Moreover, under art V, § 12 of the South Dakota Constitution, this Court is solely charged "with the responsibility for determining what is appropriate discipline in an attorney misconduct case." *Discipline of Dorothy*, 2000 SD 23, ¶ 39, 605 N.W.2d 495, 505 (citing *Matter of Discipline of Hopewell*, 507 N.W.2d 911, 917 (S.D.1993)). We have an obligation to construe SDCL 16–19–74 in a manner which is in accordance with our constitution. Therefore, we hold that SDCL 16–19–74 does not require the automatic imposition of the discipline imposed in Nebraska under these facts.

## ISSUE TWO

[¶ 18.] **The appropriate discipline to be imposed upon Rokahr.**

[¶ 19.] This is not an instance where this Court is required to choose between the discipline imposed in Nebraska or the sanction of the South Dakota Disciplinary Board. The final determination of the appropriate discipline of a member of the State Bar of South Dakota rests firmly and exclusively with this Court. *In re Discipline of Wehde*, 517 N.W.2d 132, 133 (S.D.1994).

[¶ 20.] The purpose of the disciplinary process is to protect the public and not to punish the lawyer. *Petition of Pier*, 1997 SD 23, ¶ 8, 561 N.W.2d 297, 299. An additional purpose is to deter similar conduct by other attorneys. *Matter of Discipline of Tidball*, 503 N.W.2d 850, 856 (S.D. 1993). "The appropriate discipline in a particular case is determined by consider-

---

4. In its most basic form the full faith and credit clause merely requires us to recognize Rokahr was suspended from the practice of law in Nebraska for one-year, which we obviously do. *Signer*, 533 S.W.2d at 536.

ing the seriousness of the misconduct and the likelihood that it or similar misconduct will be repeated." *In re Discipline of Eicher,* 2003 SD 40, ¶ 47, 661 N.W.2d 354, 369 (citing *Light* 2000 SD 100, ¶ 12, 615 N.W.2d at 168).

[¶ 21.] We have repeatedly held that the " 'right to practice law' is not in any proper sense of the word a 'right' at all, but rather a matter of license and high privilege." *Application of Widdison,* 539 N.W.2d 671, 675 (S.D.1995) (quoting *In re Egan,* 52 S.D. 394, 398, 218 N.W. 1, 2–3 (1928)). Nevertheless, the attorney who is the subject of a disciplinary complaint is entitled to fundamental due process protections throughout the proceedings. *See Appeal of Schramm,* 414 N.W.2d 31, 34 (S.D.1987). "The formality and procedural requisites of a hearing to address the issue of professional negligence and misconduct depends on the nature of the subsequent proceedings and the importance of the interests involved." *Id.* (citing *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).

> It has been repeatedly held in this state that the revocation of a license of a professional [person] carries with it dire consequences. It not only involves necessarily disgrace and humiliation, but it means the end of [her] professional career. In a proceeding so serious, due process of law requires a definite charge, adequate notice and a full, fair and impartial hearing.

*Schramm,* 414 N.W.2d at 35 (citing *Smith v. Dept. of Registration,* 412 Ill. 332, 106 N.E.2d 722, 728 (1952)). These principles guide us in our careful consideration of the appropriate discipline for a member of the bar of this state.

[¶ 22.] Herein, there is no indication Rokahr has had any previous complaints against her which were found to have been meritorious. This is a factor that weighs in her favor. *In re Discipline of Dorothy,* 2000 SD 23, ¶ 39, 605 N.W.2d 493, 505. As it relates to this specific complaint, we give the factual determinations of the South Dakota Disciplinary Board serious consideration and conclude those findings not to be clearly erroneous. These findings absolved Rokahr of the most serious charges concerning backdating the easement and then lying about it under oath. *See Matter of Voorhees,* 294 N.W.2d 646 (S.D.1980)(disbarment for conviction of making and using false documents). The findings by the Board relating to minor violations of rules by Rokahr concerned negligent acts rather than intentional ones. This is a mitigating factor in assessing the appropriate discipline. *Dorothy,* 2000 SD 23, ¶ 39, 605 N.W.2d at 505 (citing *In re Claggett,* 1996 SD 21, ¶ 15, 544 N.W.2d 878, 881). The Board also found there was little likelihood that Rokahr would repeat her past mistakes and we agree. We have repeatedly held that the failure to acknowledge and admit misconduct which has been established as fact points towards a more severe sanction. *Dorothy,* 2000 SD 23, ¶ 41, 605 N.W.2d at 505 (citing *Matter of Discipline of Lacey,* 283 N.W.2d 250, 253 (S.D.1979)). Rokahr acknowledged her failure to identify conflicts as they developed and the fact she too readily acceded to the directions of her client as found by the Disciplinary Board. She has informed this Court that "I certainly stand ready to fully comply in all respects with the South Dakota rules."

[¶ 23.] We have recently examined in detail the relationship of professional attorney competence to professional discipline. *In re Discipline of Laprath,* 2003 SD 114, 670 N.W.2d 41. Therein, we held:

> The level of professional competence that one must posses to be granted the

privilege to practice law in this state has its basis in the recognition of the goal-to assume ... control of the important affairs of others and to guide and safeguard them when, without such assistance, they would be helpless ... we recognize that human frailty being what it is, mistakes may happen where the competent attorney simply commits an act of malpractice. While this individual act may subject the attorney to respond in monetary damages, it is not the basis for removal from the bar.

*Id.* ¶ 78. As a result, we concluded that removal from the roll of attorneys was an appropriate action for protection of the public where an attorney fails to possess the "fundamental level of competence which an attorney must possess." *Id.* ¶ 79.

[¶ 24.] The South Dakota Disciplinary Board found that Rokahr possesses the requisite level of competence required of an attorney. While we do not condone an attorney's failure to promptly file documents such as the easement at issue here, this failure was determined to be an inadvertent and isolated incident which will probably not be repeated. Moreover, no member of the public was harmed by this conduct of procrastination.[5]

[¶ 25.] We accept the findings and recommendations reached in the South Dakota proceeding and decline to impose reciprocal discipline in this instance. An order consistent with this opinion shall be entered accordingly.

[¶ 26.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

**5.** SDCL 31–22–1 declares that every owner of an isolated tract of land of at least ten acres not touched by a passable public highway may secure a sixty foot easement to gain access to the realty. We upheld the constitutionality of this statute in *Frawley Ranches v. Lasher,* 270 N.W.2d 366 (S.D.1978). Thus, we agree with the observation of the South Dakota Disciplinary Board that a written easement in this matter, as was prepared by Rokahr, transferred no ownership rights in land not already vested by statute. In fact, this statutory easement would exceed the grant of the easement drawn by Rokahr as the statutory easement becomes a public right-of-way. *Id.* For reasons we cannot ascertain, this was not addressed in the Nebraska disciplinary proceedings.