RUSCH, Circuit Judge
(dissenting).
[¶ 23.] I respectfully dissent. Jank-low’s license to practice law should not be returned until he has satisfactorily completed the three-year period of probation ordered by the circuit court in Moody County for the criminal offenses of failure to stop at a stop sign, speeding, reckless driving, and second degree manslaughter.
[¶ 24.] It is important to recognize that these disciplinary proceedings are not part of Janklow’s punishment for those convictions. The trial court in Moody County had the right and obligation to impose an appropriate punishment for Janklow’s criminal offenses which resulted in the death of Randolph Scott. “The purpose of this [disciplinary] action is not to give a punishment. Punishment for any criminal activity is handled in sentencing [.] ” Discipline of Simpson, 467 N.W.2d at 922. See also Petition of Pier, 1997 SD 23, ¶ 8, 561 N.W.2d 297, 299 (citing Discipline of Simpson, supra; Matter of Discipline of Stanton, 446 N.W.2d 33, 42 (S.D.1989); Matter of Discipline of Strange, 366 N.W.2d 495, 497 (S.D.1985)).
The purpose of a criminal prosecution is to punish a crime against the State, The purpose of civil contempt is to punish the wrongdoer. The purpose of attorney disciplinary proceedings is not to punish the attorney anew, but rather to take sufficient measures for the protection of the public and its legal system from a repetition of these types of incidents.
Discipline of Wilka, 2001 SD 148, ¶ 17, 638 N.W.2d at 250 (citing Discipline of Hopewell, 507 N.W.2d at 917). As pointed out *36 by the majority in footnote one, some states require automatic disbarment of a lawyer convicted of a felony, but South Dakota has not adopted such a rule.
[¶ 25.] The majority opinion correctly states the standard of review and the purposes of disciplinary proceedings. The goals of a lawyer’s disciplinary proceeding should be: 1) the protection of the public from further fraudulent, unethical, or incompetent activities involving the attorney; and 2) the preservation of the image and integrity of attorneys, the bar association and the legal profession as a whole. While I agree with the majority’s consideration of the first goal, the Court should reach a different result when it considers the second goal.

Protection of the public

[¶ 26.] The Court is correct in finding that Janklow does not present a risk of harm to the public from fraudulent, unethical, or incompetent activities. Janklow’s case is clearly different from those attorney discipline cases involving fraud, dishonesty, deceit, or misrepresentation and from those cases involving harm to clients. His criminal convictions were unrelated to the practice of law. While the public may be concerned about Janklow’s driving, there is no reason to believe that the public needs protection from his conduct as an attorney. Janklow has had a long and distinguished career as an attorney. The record before this court was full of examples of people he has helped and the good he has done as an attorney. There is no evidence to suggest that Janklow is a threat to the public if he is allowed to return to the practice of law.

Preservation of the image and, integrity of the legal profession

[¶ 27.] I disagree with the result reached by the majority because of the second goal, i.e. the need to preserve the image and integrity of attorneys, the bar association, and the legal profession as a whole. “Lawyers must guard against conduct that diminishes public confidence in the legal system.” Discipline of Ortner, 2005 SD 83, ¶ 48, 699 N.W.2d at 879. “If an attorney knowingly and repeatedly violates the law, he places his license to practice in jeopardy and his actions result in a loss of respect for the profession from the public.” Matter of Discipline of Johnson, 488 N.W.2d 682, 684 (S.D.1992), vacated on rehearing, 500 N.W.2d 215 (S.D.1993).
As officers of this court, attorneys are charged with obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney’s oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.
Discipline of Jeffries, 500 N.W.2d at 222 (quoting Discipline of Parker, 269 N.W.2d at 780).
[¶ 28.] There are no South Dakota cases dealing with the appropriate discipline for an attorney convicted of manslaughter or a similar offense. However, as pointed out by the Court in footnote three, there are similar cases in other states. Most of those cases involved DWI convictions. A DWI is an aggravating circumstance which was not present in this case as Janklow had not been drinking. In those cases, Colorado only imposed a public censure (there was a DWI); California imposed a six-month suspension (no DWI but twenty previous traffic violations); Ohio imposed an eighteen month suspension (a DWI); Washington imposed *37 a twenty-four month suspension (a DWI and two deaths); Delaware imposed a three-year suspension (a DWI); Pennsylvania imposed a four-year suspension (two deaths as a result of a hit and run); New Mexico imposed an indefinite suspension (a DWI); and Oklahoma disbarred the attorney (a DWI). A review of South Dakota attorney discipline cases over the past fifteen years shows very few cases involved suspensions for as long as three years.[4] The cases which resulted in disbarment generally involved fraudulent or unethical conduct which seriously harmed clients.
[¶ 29.] Janklow’s case is different because he is the most well-known attorney in the State of South Dakota as a result of his service as Attorney General from 1975 to 1979, as Governor from 1979 to 1987 and from 1995 to 2003, and as a member of the United States House of Representatives from 2004 until his resignation following the events leading to this disciplinary action. Because of his prominence, his arrest and convictions have caused more harm to the public image and view of the integrity of attorneys, the bar association, and the legal profession than similar conduct by a lawyer of lesser renown. The Supreme Court has considered an attorney’s public position as indicating the need for more severe sanctions. See Discipline of Johnson, 488 N.W.2d 682, vacated on rehearing, 500 N.W.2d 215; Discipline of Jeffries, 488 N.W.2d 674 (S.D.1992), vacated on rehearing, 500 N.W.2d 220. Jank-low’s acknowledged violations of the traffic laws and these convictions, while he was an elected public official, have tarnished the image and integrity of the legal profession as a whole.
[¶ 30.] A delay in the return of Jank-low’s license to practice law until he has completed his probation may result in the loss of his license for a period of time longer than similarly situated lawyers. As pointed out above, very few South Dakota cases have involved suspensions for as long as three years. However, none of the lawyers involved in those disciplinary cases were as prominent as Janklow. Because of his public positions, Janklow’s violations of the law did more to lessen respect for the law and public confidence in the legal *38 profession. This justifies dealing with him more harshly than others were dealt with. Janklow’s license to practice law should not be returned until he has completed his period of probation.

. See Discipline of Ortner, supra (nine month suspension); Discipline of Arendt, supra (one hundred twenty day suspension); In re Reciprocal Discipline of Rokahr, 2004 SD 66, 681 N.W.2d 100 (public admonishment); Discipline of Laprath, supra (disbarment); Discipline of Eicher, supra (one hundred day suspension); In re Discipline of Mattson, 2002 SD 112, 651 N.W.2d 278 (two year suspension); Discipline of Wilka, supra (public censure); In re Discipline of Light, 2000 SD 100, 615 N.W.2d 164 (public censure); In re Discipline of Mines, 2000 SD 89, 612 N.W.2d 619 (disbarment); In re Discipline of Dorothy, 2000 SD 23, 605 N.W.2d 493 (public censure); Matter of Claggett, 1996 SD 21, 544 N.W.2d 878 (public censure); Matter of Discipline of Olson, 537 N.W.2d 370 (S.D.1995) (three year suspension); Matter of Discipline of Mines, 523 N.W.2d 424 (S.D.1994) (public censure); Discipline of Wehde, supra (two year suspension); Matter of Bihlmeyer, 515 N.W.2d 236 (S.D.1994) (public censure); Discipline of Hopewell, supra (indefinite suspension); Matter of Discipline of Martin, 506 N.W.2d 101 (S.D.1993) (two year suspension); Matter of Discipline of Tidball, 503 N.W.2d 850 (S.D. 1993) (three year suspension); Matter of Discipline of Johnson, 500 N.W.2d 215 (S.D.1993) (two year suspension); Discipline of Jeffries, supra (three year suspension); Matter of Discipline of Taylor, 498 N.W.2d 200 (S.D.1993) (public censure); Matter of Discipline of Russell, 493 N.W.2d 715 (S.D.1992) (one year suspension); Matter of Discipline of Kallenberger, 493 N.W.2d 709 (S.D.1992) (public censure); Matter of Discipline of Schmidt, 491 N.W.2d 754 (S.D.1992) (public censure); Petition of Pier, supra (disbarment); Discipline of Simpson, supra (two year suspension); Matter of Discipline of Bleeker, 466 N.W.2d 858 (S.D.1991) (six month suspension); Matter of Discipline of Hendrickson, 456 N.W.2d 140 (S.D.1990)(disbarment); Matter of Discipline of Bergren, 455 N.W.2d 856 (S.D.1990)(one year suspension).